OPINION
The present appeal arises following a jury verdict convicting Leseanne Smith of aggravated robbery and felonious assault with accompanying firearm specifications. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
The record reflects that during the evening hours of November 25, 1996, Michael Scott ("Scott") was driving his vehicle in the City of Steubenville. While so proceeding, an individual walked into the roadway directly in front of Scott's vehicle forcing him to come to a stop in order to avoid hitting the individual. A second individual then approached the passenger side of Scott's vehicle and fired a weapon in the direction of the vehicle. As a result, the passenger's side window of the vehicle shattered and Scott was struck in the side by a metal projectile. Scott immediately put his vehicle in reverse and drove away while the two individuals fled on foot. Scott then proceeded to a nearby Dairy Mart and telephoned the Steubenville Police Department. Officers arrived at the scene shortly thereafter and began an investigation of the incident. Scott would later receive treatment for a wound to the right side of his body.
While police were not able to develop many leads early on in the case, they received a break on January 17, 1997. On that date, Detective Lelless of the Steubenville Police Department was allegedly contacted by an employee of the Jefferson County Sheriff's Department who informed him that an inmate by the name of Norman Dejuan Brown at the Jefferson County Jail wanted to speak with him. Upon speaking with Mr. Brown, it was discovered that Brown's cell mate, Leseanne Smith ("appellant"), wished to speak with a detective regarding events which transpired on November 25, 1996.[1] Lelless then met with appellant on January 19, 1997 and did not gain any information as appellant insisted on being granted immunity. However, Brown again contacted Lelless later that same day and advised that appellant was willing to give a statement. After being advised of the Miranda warnings and having executed a waiver of such, appellant provided a written statement regarding not only his role in the attack upon Scott but also his presence at a homicide that same evening.
Subsequent to obtaining appellant's statement, an indictment was handed down by the Jefferson County Grand Jury on February 13, 1997. Pursuant to said indictment, appellant was charged with one count of felonious assault in violation of R.C. 2903.11 (A) (2) and one count of aggravated robbery in violation of R.C. 2911.01 (A) (1). Each count was accompanied by a firearm specification. On February 20, 1997, appellant entered pleas of not guilty to all charges. Thereafter, appellant filed a motion for reduction of bond as well as a motion to suppress his written confession on the basis that it was not voluntarily made. It was the decision of the trial court to overrule both motions. In that appellant refused to request a continuance or sign a waiver of his speedy trial rights, the case was set for a jury trial on March 20, 1997.
Following the presentation of witness testimony and the admission of various exhibits, the jury briefly deliberated. A guilty verdict was ultimately returned on both counts in addition to the firearm specifications. At the sentencing hearing on March 26, 1997, the trial court sentenced appellant to an eight year term of incarceration on both the felonious assault conviction and the aggravated robbery conviction with each term to run concurrently with the other. Additionally, appellant was sentenced to a three year term of incarceration on each firearm specification. Said terms were to run concurrently with one another but consecutively with the eight year sentence. It is from this decision that appellant filed a timely notice of appeal on April 22, 1997.
Appellant raises five assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads as follows:
 "THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONY CONCERNING MR. SMITH'S ORAL CONFESSION AND MR. SMITH'S WRITTEN STATEMENT REGARDING THE AGGRAVATED ROBBERY AND THE TWO FIREARMS SPECIFICATIONS CONTAINED IN THE INDICTMENT."
Under appellant's first assignment of error it is asserted that the trial court erred in admitting testimony regarding appellant's oral and written confession as it had not previously been presented with any additional evidence which independently corroborated that the offenses occurred. Pursuant to federal and state authority, appellant contends that the premise of corpus delicti prevents the introduction of a defendant's inculpatory statement prior to the admission of evidence which substantiates the commission of a criminal offense. Specifically, appellant argues that the trial court was not presented with independent evidence as to the commission of an aggravated robbery nor was it established that a firearm was used by the offender.
 A. APPLICABLE LAW
The corpus delicti rule, as related to extrajudicial confessions is a "vestige of a time when brutal methods were commonly used to extract confessions, sometimes to crimes that had not been committed." State v. Kerley (C.A. 7, 1988),838 F.2d 932, 939. In an attempt to protect those individuals who confessed to crimes that they not only did not commit but which were never committed by anyone, Ohio courts began to require that some evidence be produced outside of the confession which tended to establish the corpus delicti or body of the crime before the confession itself would be deemed admissible. State v. Maranda
(1916), 94 Ohio St. 364, 370. The corpus delicti of a crime has been defined as (1) the act itself, and (2) the criminal agency of the act. State v. Van Hook (1988), 39 Ohio St.3d 256, 261 citingMaranda, supra.
While the prosecution has the burden of providing additional evidence that a crime did in fact occur, the extent of this burden is quite minimal. As this court previously stated in State v.Twyford (Sept. 25, 1998), Jefferson App. No. 93-J-13, unreported, "only a modicum of evidence is necessary before a confession will be deemed admissible" in the context of the corpus delicti rule. Id. at 30. The Ohio Supreme Court provided further guidance in regards to the standard of proof when it stated that the prosecution need only adduce some proof tending to prove the act and its agency, but not necessarily such evidence as would equate to proof beyond a reasonable doubt or even that amount of proof necessary to make a prima facie case. Van Hook, supra at 260-261. Furthermore, said evidence need only relate to some material element of the crime charged rather than to each element of the offense. State v. Black (1978), 54 Ohio St.2d 304, 307. As to the nature of the evidence provided, it need not be direct and positive but rather may be circumstantial. State v. Nicely (1988),39 Ohio St.3d 147, 152.
It should be noted that due to the numerous procedural safeguards which have been emplaced for criminal defendants since the creation of the corpus delicti rule, the Ohio Supreme Court has often expressed its doubt as to the practicality of the rule in today's legal environment. Black, supra citing State v. Edwards
(1976), 49 Ohio St.2d 31, 36. Therefore, the court has explained that it finds little reason to apply the rule "with a dogmatic vengeance." Id.
 B. ANALYSIS
Despite appellant's contentions to the contrary, the prosecution introduced sufficient evidence prior to the admission of the confession to meet the minimal burden of proof established in the corpus delicti rule. In first looking to the aggravated robbery charge, appellant takes issue with the fact that the officers which responded to the incident on November 25, 1996 did not make any notation in their report indicating that a robbery had been committed. Appellant asserts that it was not until the time of his confession that the investigating officers had any inkling that a robbery or an attempt at such had taken place. Moreover, appellant is of the opinion that the portion of the record prior to the admission of his written confession is devoid of any evidence that a robbery occurred.
However, appellant has lost sight of that amount of proof which the prosecution must place in the record prior to introducing an extrajudicial confession. The prosecution need not introduce evidence which establishes a prima facie case of robbery. Van Hook, supra. On the contrary, all that is required is some evidence, whether it be direct or circumstantial, which relates to some material element of the crime. Black, supra.
Pursuant to R.C. 2911.01 (A) (1), an offense of aggravated robbery is defined as follows:
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01
of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *." (Emphasis added).
A review of the record in the case sub judice reveals that prior to admitting appellant's confession, testimony regarding the November 25, 1996 incident was introduced which supported that an attempt was made by appellant and his accomplice to commit a theft offense. The state's first witness in the proceedings was the victim, Michael Scott. Through his testimony it was established that a subject wearing a mask and a long coat stepped into the path of Scott's vehicle forcing him to stop. The subject remained in the roadway preventing Scott from continuing down the road. Immediately thereafter, a second subject approached the passenger side of the vehicle and fired a weapon which resulted in the passenger side window being shattered and Scott being injured.
This testimony alone is sufficient to meet the some evidence standard of the corpus delicti rule. From this testimony one could reasonably deduce that appellant and his accomplice intended to rob Scott. These two individuals took substantial steps by stopping Scott's vehicle and attempting to prevent Scott from fleeing. Had. Scott not been able to put the car in reverse and escape, it could be inferred that a theft offense would have been completed. The fact that a robbery was not successful does not discharge appellant from the crime. Furthermore, while testimony was not elicited that appellant deprived Scott of personal property or conveyed his intent to do so, such is not necessary. Under the portion of the aggravated robbery statute relevant to the case at bar, all that is required is an attempt at completing a theft offense. The victim's testimony is sufficient in describing the circumstances surrounding the events which transpired to constitute some evidence that an aggravated robbery offense took place on November 25, 1996.
The record similarly provides ample evidence as related to the firearm specifications. Prior to the introduction of any testimony regarding appellant's confession, the prosecution called three witnesses to the stand, all of which provided testimony sufficient to meet the some evidence standard. First, Scott testified that the individual which approached the passenger side of the vehicle "shot through my passenger window of my car." (Tr. at 53). The projectile which shattered the window and then struck Scott was described as being a pellet or a piece of a bullet. While Scott was not afforded the opportunity to see the weapon used, his testimony does provide substantiation to appellant's statement that a firearm was used during the course of the criminal activity.
Patrolman Rudy Sciarra was next called to the stand to testify regarding his initial investigation on the evening of November 25, 1996. When asked on direct examination whether he found any physical evidence that a firearm had been used, Patrolman Sciarra testified that he had found a small fragment of a projectile. A second investigating officer, Patrolman James Sloane, testified that a small piece of metal or possibly lead was discovered in Scott's clothing near the site of the wound.
Appellant attempts to refute this testimony by indicating that the initial police report stated that "apparently" a pellet gun had been used by the suspect. Appellant goes on to argue that the investigating officers had concluded that a firearm was not used during the offense. However, Patrolman Sloane clearly indicates in his testimony at trial that he did not know for a fact that the weapon used was a pellet gun. Pursuant to the minimal burden of proof placed upon the state, the testimony provided is sufficient to constitute some evidence that a firearm was used during the offense. While the testimony is by no means definitive, such is not required prior to the introduction of appellant's confession. Van Hook, supra. The testimony provided to the trial court regarding the events on November 25, 1996 is adequate so as to squelch any concerns that appellant confessed to a crime which did not occur.
Having met its burden of proof under the corpus delicti rule, appellant's first assignment of error is overruled.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "THE TRIAL COURT ERRED WHEN IT SUA SPONTE REVERSED ITS EARLIER DECISION AND ADMITTED EVIDENCE OF MR. SMITH'S PRESENCE AT AN UNRELATED MURDER."
Appellant next argues that the trial court erred in permitting testimony regarding his presence at a murder which occurred the same evening as the crimes against Scott. During direct examination of Sergeant Joe McCullough of the Steubenville Police Department as well as during cross-examination of appellant, the state elicited testimony as to that portion of appellant's confession which indicated he accompanied another individual when a security guard was shot and killed in the same vicinity as the felonious assault and aggravated robbery against Scott. The admission of this testimony is viewed as error in violation of Evid.R. 404 (B) in that it is asserted that it equates to other acts evidence introduced for the purpose of establishing propensity and/or inclination.
Appellee responds to this argument by indicating that the testimony regarding the homicide was not admitted for propensity or inclination purposes. On the contrary, appellee argues this testimony was introduced solely to combat appellant's cross-examination of witnesses which attempted to establish that a pellet gun rather than a firearm was used in the crimes at issue. Appellee asserts that the testimony regarding appellant's presence at the homicide was necessary in that the same weapon was admittedly used at both crimes. Due to the fact that the weapon was determined to be a firearm in the homicide offense, testimony regarding this matter was admissible in the case at bar to establish that a firearm was used by appellant in committing the offenses against Scott.
 A. APPLICABLE LAW
In reviewing a trial court's decision to admit or exclude evidence, an appellate court must limit its review to whether the trial court abused its discretion. State v. Bey (1999), 85 Ohio St.3d 487,490 citing State v. Finnerty (1989), 45 Ohio St.3d 104,107. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151,157. Based upon this standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court on evidentiary issues. State v. Jenkins (1984), 15 Ohio St.3d 164,222.
In regards to the admission of what has been termed "other acts" evidence, Evid.R. 404 (B) provides that "[e]ividence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." In other words, evidence of other crimes, wrongs or acts is not admissible to establish a defendant's criminal propensity or inclination. However, this rule provides that evidence of other acts may be admitted if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."Bey, supra citing State v. Lowe (1994), 69 Ohio St.3d 527, 530.
 B. ANALYSIS
Although appellant is correct in his assertion that evidence of other acts is not admissible when it is offered solely to prove propensity, it is clear that the state did not introduce testimony regarding the homicide for this purpose. As appellee indicates and as is reflected in the record, the testimony regarding that portion of appellant's confession which addressed the homicide was offered only to substantiate that the weapon used was in fact a firearm rather than a pellet gun.
While the trial court originally determined at the hearing on the motion to suppress that this portion of appellant's statement would be off limits as it was not relevant to the proceedings, it did not originally anticipate that appellant would argue that the weapon used was a pellet gun rather than a firearm. Once this position was taken by appellant, the trial court determined that appellant's statements regarding the homicide were relevant since they substantiated that the weapon used by appellant during the assault and robbery was an operable firearm. The purpose of this testimony is clearly reflected by the court during its discussions with counsel:
 "THE COURT: Because I — because to the extent that there [are] statements in this statement that would indicate that the gun used in this case is also the gun used to kill the security officer later that day, I am now inclined to let that in on the issue of whether this is a firearm or a pellet gun." (Tr. at 101).
Based upon this discussion and the context in which the testimony regarding the homicide was elicited, appellee is correct in its assertions that the testimony was provided solely to prove that appellant had knowledge that the weapon used was a firearm. Furthermore, this testimony provides support for the contention that appellant had the opportunity to commit the charged offenses in that he possessed a firearm rather than a pellet gun. Since there was a valid purpose for the admission of this testimony which had nothing to do with appellant's character, the trial court cannot be viewed as having abused its discretion and we will not substitute our judgment on this evidentiary determination. See State v. Keene (1998), 81 Ohio St.3d 646, 661. The admission was for reasons permitted by Evid.R. 404 (B) and therefore, must be upheld. Appellant's second assignment of error lacks merit.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error reads:
 "THE TRIAL COURT ERRED WHEN IT PERMITTED PROSECUTORIAL MISCONDUCT."
In appellant's third assignment of error, it is argued that appellant's presumption of innocence and his right to a fair trial were destroyed as a result of prosecutorial misconduct. In particular, appellant points to two separate occasions in which it is felt that the prosecutor pursued improper lines of questioning during the cross examination of appellant. First, it is argued that the prosecutor elicited improper hearsay testimony when he questioned appellant as to statements made by an individual who did not testify at trial as related to appellant's involvement in the unrelated murder on the evening of November 25, 1996. Second, appellant asserts that the prosecutor improperly questioned him as to his smoking of marijuana and underage consumption of alcohol on the night of the attack on Scott.
 A. APPLICABLE LAW
This court has had the opportunity to address alleged instances of prosecutorial misconduct on multiple occasions. The test for prosecutorial misconduct is whether remarks were made by the prosecutor. which were improper and, if so, whether those remarks prejudicially affected the rights of the accused. State v.Scott (June 30, 1998), Mahoning App. No. 94 CA 188, unreported citing State v. Lott (1990), 51 Ohio St.3d 160. Furthermore, "the touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." State v. Edighoffer (Dec. 16, 1998), Mahoning App. Nos. 96 CA 161 and 96 CA 162, unreported quoting State v. Hill (1996), 75 Ohio St.3d 195, 203. As such, not every intemperate comment made by a prosecutor can be the basis for a reversal. State v. Bey (1999), 85 Ohio St.3d 487,494. As to the second prong of the test as outlined in Scott, no prejudice will be found when the state of the evidence is such that it is certain beyond a reasonable doubt that the defendant would have been found guilty even if the remark had not been made.State v. Twyford (Sept. 25, 1998), Jefferson App. No. 93-J-13, unreported citing State v. Smith (1984), 14 Ohio St.3d 13, 15. In making such a determination, the effect of the alleged misconduct must be judged in the context of the entire trial. State v. Poole
(Dec. 24, 1996), Mahoning App. No. 94 CA 205, unreported citingState v. Keenan (1993), 66 Ohio St.3d 402, 410.
Due to the fact that defense counsel failed to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived absent plain error. State v. White
(1998), 82 Ohio St.3d 16, 22. Plain error will only be held to exist when the outcome of the proceedings clearly would have been different if the misconduct had not occurred. State v. Waddell
(1996), 75 Ohio St.3d 163, 166.
 B. ANALYSIS
A review of the record as related to the instances cited by appellant reveals that the nature of the prosecutor's conduct was not of such a nature so as to warrant reversal. As to the line of questioning relating to a non-testifying witness's statement that appellant was present at the murder, such did not prejudice appellant's right to a fair trial. While the statement may in fact be characterized as inadmissible hearsay or improper character evidence, it was not so inflammatory as to destroy the presumption of innocence and prevent a fair trial. As discussed under appellant's second assignment of error, certain statements regarding appellant's presence at the murder were relevant as to the firearm specifications. Additionally, in light of the admissibility of appellant's confession as will be more fully discussed under the fourth assignment of error, absent these statements sufficient evidence was still of record so as to prove beyond a reasonable doubt that appellant committed the offenses at issue. Therefore, defendant is unable to establish any prejudice despite the impropriety of the questioning. Smith, supra.
As to the questioning regarding appellant's consumption of alcohol and smoking of marijuana, it' should be noted that counsel for appellant originally made issue of this conduct during direct examination of appellant. Therefore, the prosecutor was within the scope of cross-examination in asking questions clarifying this conduct. While appellant may be correct in his assertion that the prosecutor overstepped the bounds of cross-examination by harping on the illegality of the conduct and thereby eliciting inadmissible character evidence, this again cannot be held to be grounds for reversal. Absent these statements there still was sufficient evidence to rely upon in finding appellant guilty beyond a reasonable doubt. In that this conduct was not outcome-determinative, it was not prejudicial and did not deny appellant a fair trial.
While the prosecutor's conduct in these two instances may well have been improper, it was not sufficient to meet the requirements for reversing the ultimate verdict. Therefore, appellant's third assignment of error also lacks merit.
 V. ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error reads:
 "THE TRIAL COURT ERRED WHEN IT OVERRULED MR. SMITH'S [APPELLANT'S] MOTION TO SUPPRESS."
Appellant next argues that the trial court erred when it overruled his motion to suppress his confession. It is appellant's position that the confession should have been suppressed as it was involuntarily given. Appellant asserts that the interrogating officer advised him that if he did not cooperate he would be facing a sentence of thirty years to life for complicity to aggravated murder as related to his presence at the killing of the security guard on the same evening as the crimes against Scott. This statement is characterized as a threat which induced appellant to provide a confession out of fear of a long prison sentence.
 A. APPLICABLE LAW
This court has previously concluded that our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence.State v. Winand (1996), 116 Ohio App.3d 286, 288. This is the appropriate standard as the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Carter (1995),72 Ohio St.3d 545, 552. However, once we have accepted the facts as true, we must independently determine as a matter of law and without deference to the trial court's conclusion whether the trial court applied the appropriate legal standard. State v.Glasscock (1996), 111 Ohio App.3d 371, 374.
In determining whether a defendant's confession was voluntarily given, a totality of the circumstances test is applied. State v. Getsy (1998), 84 Ohio St.3d 180, 188. As this court noted in State v. Parish (Apr. 22, 1997), Mahoning App. No. 94 CA 83, unreported, the Ohio Supreme Court has repeatedly held that evidence of police coercion is a necessary prerequisite to a finding that a confession was involuntary. State v. Hill (1992),64 Ohio St.3d 313, 318; State v. Combs (1991), 62 Ohio St.3d 278,285; and State v. Cooey (1989), 46 Ohio St.3d 20, 28. Furthermore, said coercive actions must have been of such an extent so as defendant's will was overborne and his capacity was impaired. State v. Otte (1996), 74 Ohio St.3d 555, 562.
 B. ANALYSIS
Appellant's sole support for the proposition that his confession was involuntary is his assertion that Detective Lelless threatened him with a prosecution on the charge of complicity to aggravated murder as related to the death of the security guard if he did not cooperate and give a statement regarding the events which transpired on November 25, 1996. Appellant further states that Lelless told him he would be facing thirty years to life on the charge in the event he was convicted. Based upon this perceived threat, appellant argues that he was coerced into providing an inculpatory statement. Additionally, appellant asserts that the state used his cell mate, Dejuan Brown, to assist in facilitating the confession.
In direct contrast to appellant's version of the events, Detective Lelless testified at the hearing that he never used Brown as a "conduit for communications." On the contrary, Lelless indicated that appellant used Brown as a go-between for his own benefit. Furthermore, Lelless testified that he never threatened appellant with a complicity to aggravated murder charge in the event he did not cooperate in providing a statement. Similarly, Lelless stated he never advised appellant that he would face thirty years to life if he was convicted of his charge. According to Lelless' version of the events, he merely informed appellant that the grand jury would decide based upon the evidence before it as to whether or not any indictments would be handed down regarding the murder. Lelless further stated that a complicity to aggravated murder charge was something the grand jury could consider and such a charge carried a long prison sentence. Testimony by Lelless made it clear however that he never made reference to appellant cooperating in giving a statement nor did he promise any type of leniency for providing a statement.
In light of the conflicting testimony provided at the suppression hearing, it cannot be held that the trial court erred in overruling the motion to suppress appellant's statement. As previously discussed, the determination of witness credibility is left to the trial court in such matters in that it sits as the trier of fact. Carter, supra. The record in the case sub judice does not support a finding that the police used coercion in order to elicit appellant's confession. At worst Detective Lelless advised appellant of possible charges which could be considered by the grand jury. There is no indication that the statements made by Lelless were false or that they were of such a nature as to cause appellant's will to resist to be overborne. Any actions by Detective Lelless are not consistent with the types of conduct which the courts have viewed as constituting coercive police activity. See Cooey, supra.
 VI. ASSIGNMENT OF ERROR NUMBER FIVE
Appellant's final assignment of error reads:
 "THE TRIAL COURT ERRED WHEN IT PERMITTED MR. SMITH TO RECEIVE THE INEFFECTIVE ASSISTANCE OF COUNSEL."
In appellant's final assignment of error, he argues that he was denied his right to the effective assistance of counsel due to the fact that his attorney failed to adequately preserve issues for appellate review. Particularly, it is asserted that trial counsel failed to object to the admission of appellant's statement when the prosecutor had failed to first comply with the corpus delicti rule. Additionally, appellant argues that trial counsel failed to properly object to the prosecutor's inappropriate cross-examination as related to the homicide, underage consumption and smoking of marijuana. Having failed to object, appellant alleges that he was prejudiced at trial and therefore did not receive a fair trial. Moreover, the failure to object is viewed as precluding appellant's ability to allege error on appeal.
 A. APPLICABLE LAW
In order to prevail on a claim, of ineffective assistance of counsel, an appellant must establish (1) that the attorney's performance was deficient in that it fell below the standard of reasonably competent representation, and (2) that the deficient performance was prejudicial in that it was so serious that it deprived appellant of a fair trial. Strickland v. Washington
(1984), 466 U.S. 668, 687-88. Therefore, not only must counsel have committed serious errors during the course of his representation but appellant must illustrate that there exists a reasonable probability that he would have been found not guilty but for counsel's errors. State v. Clemons (1998), 82 Ohio St.3d 438,450. A reasonable probability has been defined as a probability sufficient to undermine the court's confidence in the outcome of the proceeding. State v. White (1999), 85 Ohio St.3d 433,450.
 B. ANALYSIS
Appellant's first basis for a finding of ineffective assistance of counsel has been disposed of by this court in addressing appellant's first assignment of error. By concluding that the prosecution had provided enough information prior to introducing appellant's confession in order to meet the requirements of the corpus delicti rule, it follows that trial counsel was not required to object to the admission of the statement. Had he objected, the trial court would have overruled the objection as the prosecution had met its burden of proof.
As to the contention that appellant should have objected during the course of the cross examination of appellant, it is clear that this conduct similarly fails to qualify as ineffective assistance of counsel. As discussed under appellant's third assignment of error, while the questioning by the prosecutor may in fact have been improper and may have elicited testimony which was inadmissable, said answers to the questioning were not prejudicial in nature. Due to the amount of evidence in the record, there is not a reasonable probability that the outcome of the trial would have been different if trial counsel had properly objected to the line of questioning. Having failed to establish the second prong of the Strickland test, appellant's fifth assignment of error is determined to lack merit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs
APPROVED:
 ___________________________ JOSEPH J. VUKOVICH, JUDGE
[1] At the time, appellant was incarcerated on an unrelated charge of criminal trespassing.