OPINION
Defendant-appellant, Timothy Ledford, appeals his conviction in the Clinton County Court of Common Pleas for rape.
Appellant is twenty-seven years old, but his mental capabilities are that of a child. He suffers from multiple mental and developmental problems, including depression, learning disabilities, and a schizoid personality disorder. His verbal understanding is equivalent to a second grade level. Appellant received social security benefits due to his problems.
On July 5, 1997, Kristy Singer could not find a babysitter for her five-year-old son, Timmy. She took him with her to the Golden Corral restaurant where she worked. That night, appellant and Chad Pfitzer came into the restaurant to eat. Singer had known appellant for a year, because they had mutual friends and because appellant's relatives lived in Singer's apartment complex. Pfitzer was appellant's roommate. Timmy sat with appellant and Pfitzer, and Singer asked if they could watch Timmy that night and the next day, because she had to return to work early the following morning. Appellant and Pfitzer agreed. They left about 10:00 p.m. and returned to appellant's apartment at 100 Sparta Avenue, Wilmington, Clinton County, Ohio.
Before Singer finished closing the restaurant at midnight, she called appellant to tell him that she was going to the Manhattan Lounge to have drinks with coworkers. At about 1:00 a.m., appellant called the Manhattan Lounge looking for Singer. Appellant told her that he had caught Timmy masturbating. Singer thought something was wrong, and told Eric Green, a friend, and Jeff Evans, her boyfriend, what appellant had said. Green immediately went to appellant's apartment, where he confronted appellant, accusing him of having done something to Timmy.
Appellant's apartment manager, Shawn Matthews, attempted to calm the situation. When this failed, the police were called. Officer Kelly Hopkins of the Wilmington Police Department ("WPD") arrived a few minutes later to find Green outside, holding Timmy. Green was yelling obscenities about appellant. Singer and Evans arrived about 3:00 a.m., and Singer took Timmy home. Timmy was visibly scared, but no accusations were made against appellant to Officer Hopkins.
The following day, Singer took Timmy with her to work. Evans came to the Golden Corral and took Timmy out to his tractor-trailer to watch movies. Timmy did not want to sit with Evans in the truck. When Evans asked what was wrong, Timmy said that appellant had sucked on his penis the night before. Evans told Singer what Timmy had said, who then asked Timmy what had happened. Timmy repeated that appellant had sucked on his penis.
The police were called, and Timmy was questioned. Singer and Evans took Timmy to Clinton Memorial Hospital, where he was examined by Dr. Matthew Emerick. No signs of abuse were found, although Timmy did have a fungal infection on his penis due to a lack of cleanliness. Children's Services was contacted, and Timmy was released to go home.
The following day, Dep. Christopher Lester of the Sheriff's Office, assigned to work with Children's Services, and Stephanie Hoeffler-Newkirk, a Children's Services case worker, began an investigation. They interviewed Singer and Timmy at home. Timmy repeated that appellant had sucked on his penis.
Dep. Lester and Hoeffler-Newkirk went to appellant's apartment. Pfitzer was in the apartment, although he remained in another room while Dep. Lester and Hoeffler-Newkirk interviewed appellant. At first, appellant denied having done anything to Timmy. He stated that he had caught Timmy masturbating, but that when he told Singer, she told him not to worry about it. Appellant said that he would not do what Timmy alleged.
Appellant told the investigators that when he tried to get Timmy to take a shower, Timmy would not clean himself. Appellant then washed Timmy, including his genitals. After Timmy had been put to bed, he came out looking for a cookie. Appellant and Pfitzer were watching movies with sexual content, and Timmy may have seen part of one of these movies. After being asked why Timmy would accuse appellant of molesting him, appellant became demonstrably upset. Appellant told the investigators that he had gotten help in the past because he was molested as a child and was afraid that he might touch or become sexually involved with a child.
At that point, appellant stated that he had put Timmy to bed after Timmy had taken a shower. Timmy said he was scared and asked appellant to lay down with him in the bed. Timmy then began to jump up and down on a stuffed bear as if he was humping it. Timmy asked appellant to touch his penis. Appellant tickled Timmy's stomach, and asked if that was what he meant. Timmy said no, stating that he wanted appellant to touch and suck on his penis. To teach Timmy that he shouldn't act in such a manner, appellant put Timmy's penis in his mouth and bit on it.
Dep. Lester asked appellant if he would make a written statement, and appellant agreed. Because appellant could not write well, he let Dep. Lester transcribe the statement from his verbal account. Appellant repeated that he molested Timmy. Appellant read out loud the statement, as transcribed by Dep. Lester, and signed it. Dep. Lester asked clarifying questions, which were included in the space after appellant's statement.
Later that day, the WPD received a call that someone at appellant's apartment complex had been threatened. Officer Craig Nicol was dispatched to the scene. When he arrived, he found appellant, who was visibly stressed, outside. Appellant said that he was the one who had called in the complaint. When Officer Nicol asked what was the problem, appellant stated that there was something else he had to first tell. He then told Officer Nicol that he had babysat a child the night before and that he had put the boy's penis in his mouth and bit on it. Officer Nicol, shocked, asked appellant to repeat his statement, which appellant did.
Officer Nicol then sought to address appellant's complaint. Pfitzer had apparently threatened appellant's life. Pfitzer was not supposed to be staying in appellant's apartment, and appellant wanted him to leave. Officer Nicol ejected Pfitzer from the apartment. Officer Nicol then asked appellant to accompany him to the police station for further questioning. Appellant agreed, and, once at the station, made another confession, which was audiotaped.
Over the next few days, Dep. Lester and Hoeffler-Newkirk developed little additional information concerning the allegations. They did find out that Pfitzer had a prior criminal record and that he was not supposed to be in appellant's complex. Sue Wilson, one of the apartment managers, told them that she had responded to a smoke alarm the night of the offense. When she entered appellant's apartment, she found Pfitzer holding a pan of burnt cookies, covered only by a towel wrapped around his waist. Timmy was standing with Pfitzer. There were also concerns that Pfitzer was threatening appellant and other residents of the complex.
On July 14, 1997, appellant was indicted on one count of rape of a child under thirteen years old, in violation of R.C.2907.02(1)(b), a first degree felony. On August 8, 1997, appellant's counsel filed a motion to determine competency. On September 18, 1997, appellant filed a motion to suppress his confessions. After holding a suppression hearing, the trial court overruled appellant's motion as to appellant's statements to Dep. Lester and Hoeffler-Newkirk and appellant's spontaneous statement to Officer Nicol. Appellant's audiotaped statement was suppressed. On July 14, 1998, the indictment was amended from rape to sexual battery, in violation of R.C. 2907.03(A)(9), a third degree felony, and appellant pled guilty to the amended charge.
On September 9, 1998, appellant filed a motion for substitution of counsel and a motion to withdraw his guilty plea. On October 15, 1998, the trial court granted appellant's motion to withdraw his plea, and the earlier entry amending the indictment was vacated and the rape charge reinstated. On October 19, 1998, the trial court granted appellant's motion for substitution for counsel, and new counsel was designated. On November 3, 1998, the state requested a hearing to determine appellant's competence, and the trial court ordered appellant to undergo psychiatric evaluation. A competency hearing was held, and on January 7, 1999, appellant was found competent to stand trial.
Jury voir dire was held on January 27, 1999. Juror Culberson stated that she had prior contact with both appellant and Dep. Lester. Culberson knew appellant because he and his parents had come into her office at a local utility to pay bills in previous years. She knew Dep. Lester through Dep. Brian Edwards, who was investigating the disappearance and presumed murder of Culberson's daughter. Dep. Edwards had no involvement in appellant's case, and Dep. Lester had no involvement in the case concerning Culberson's daughter. Culberson stated that these minimal prior contacts with appellant and Dep. Lester would not affect her impartiality.
Juror Marshall initially stated that she expected appellant's counsel to provide some evidence tending to prove that appellant was not guilty. She felt that counsel was not helping appellant if he did not present any witnesses. The trial court inquired if she understood that appellant was presumed innocent until the state proved otherwise and if she would follow the trial court's instructions regarding the state's burden of proof and the law. Marshall agreed that she would follow the trial court's instructions and set aside any prior beliefs. Upon further questioning by appellant's counsel, she stated that she believed that she had a "natural ability to read through a child" and that parents can manipulate their children, especially when the children are young.
Juror Hicks did not indicate any bias when first questioned. Appellant's counsel later asked a general question to the full jury panel regarding their view of psychiatric testimony. An unidentified panel member responded that she believed that such testimony was "a cop-out" and that she "didn't see what it had to do with molesting a child." Appellant's counsel asked if anyone agreed with these statements. Hicks raised his hand, but appellant's counsel did not inquire of Hicks. The jury, which included Culberson, Marshall, and Hicks, was sworn.
Timmy, Singer, Hoeffler-Newkirk, Dep. Lester, and Officer Nicol testified on behalf of the state. Timmy testified that appellant did not touch him or harm him in any way. Singer testified that Timmy told her something that caused her to call the police and take Timmy to the hospital, where she watched him be examined. Hoeffler-Newkirk testified as to the course of her investigation with Dep. Lester and what she was told by appellant.
During Dep. Lester's testimony, appellant objected to his testimony regarding appellant's statement and the state's introduction into evidence of appellant's written statement. Appellant argued that the state had failed to prove the corpusdelicti of the crime before attempting to introduce appellant's statements. The trial court overruled appellant's objection, finding that the state had produced some evidence that a crime had occurred.
Officer Hopkins, Matthews, and Dr. Jolie Brams, Ph.D., were among appellant's witnesses. Officer Hopkins testified about his actions at appellant's apartment in diffusing the confrontation between Green and appellant. He testified that no accusations were made that appellant molested Timmy, and that appellant made no statements that he had hurt Timmy. Matthews testified regarding these events as well. He also testified that Pfitzer had threatened appellant and other residents of the complex, and that Pfitzer had been seen alone with Timmy that night. Appellant sought to show that it was Pfitzer who had molested Timmy. Dr. Brams testified as to appellant's mental condition, in support of appellant's claim that his statements were not knowingly made and that they were not credible.
At the close of the testimony, documentary evidence was admitted into evidence. One item was Dr. Emerick's medical report of his examination of Timmy. Throughout the course of the trial, the parties argued about what portions of this report should be admitted into evidence. At the close of the evidence, the parties agreed upon what sections would be admitted into evidence, and stipulated to the same. The trial court admitted the agreed-upon portions of the report into evidence in accordance with the stipulation.
On January 29, 1999, the jury found appellant guilty. Appellant's competence to be sentenced was evaluated, and appellant was found competent. A sentencing hearing was held, and on May 18, 1998, appellant was sentenced to a three-year term of imprisonment. Appellant appeals, raising a single assignment of error:
COUNSEL FOR DEFENDANT WAS INEFFECTIVE.
In his sole assignment of error, appellant contends that he received ineffective assistance of counsel at trial. Appellant argues that trial counsel failed to properly voir dire the jury, and that counsel failed to object to the testimony regarding appellant's statements, testimony regarding Timmy's statements, and the admission of Timmy's medical records.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, the defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; Statev. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied,63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1997), 522 U.S. 953,118 S.Ct. 376.
Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, id. at 142, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland,466 U.S. at 689, 104 S.Ct. at 2065; State v. Lytle (1976), 48 Ohio St.2d 391,397, vacated in part on other grounds, Lytle v. Ohio (1978),438 U.S. 910, 98 S.Ct. 3135. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel.State v. Carter (1995), 72 Ohio St.3d 545, 558, certiorari denied, 516 U.S. 1014, 116 S.Ct. 575. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516,524-525, certiorari denied, Cook v. Ohio (1994),510 U.S. 1040, 114 S.Ct. 681. This is especially so in the case of motions and objections, where counsel is not required to make futile motions or objections that are without merit. See State v.Lott (1990), 51 Ohio St.3d 160, 175-176, certiorari denied,498 U.S. 1017, 111 S.Ct. 591.
Appellant first argues that trial counsel inadequately questioned jurors Culberson, Marshall, and Hicks for bias. Juror Culberson admitted to having prior contact with both appellant and Dep. Lester. But she stated that this prior contact would not affect her impartiality. During trial, she visited the prosecutor's office to leave a phone number with Assistant Prosecutor Rick Moyer, who was prosecuting the case of her daughter's disappearance. Moyer was not involved in appellant's case. The court and appellant were given told of Culberson's visit, and appellant specifically told the court that Culberson's actions did not show any bias or prejudgment against appellant.
Appellant now argues that trial counsel should have challenged Culberson because she was clearly biased against appellant. The record does not support this contention. The disappearance of Culberson's daughter was a highly publicized case, and Culberson made no attempt to hide her interest in that case or her prior contact with the Sheriff's Office and the Prosecutor's Office. Appellant's trial counsel, the prosecutor, and the trial court asked her if her impartiality would be affected by the case of her daughter's disappearance or her minimal prior contacts with appellant and Dep. Lester. She responded that she would remain impartial. Appellant has provided nothing to indicate that she was not impartial, and there is no indication that her visit to the Prosecutor's Office concerning the investigation of her daughter's case arose out of or resulted in a bias against appellant. Appellant and his counsel conceded as much at trial.
Appellant argues that trial counsel should have challenged juror Marshall because she believed that appellant was required to present evidence proving his innocence. The trial court and trial counsel both informed Marshall that only the state had a burden of providing evidence. The trial court specifically admonished Marshall about the proper evidentiary burdens and inquired whether she would set aside any prior beliefs and follow the instructions of the court. Marshall stated that she understood the trial court's admonition, and she agreed to follow the trial court's instructions.
Appellant asserts that, even with these instructions, Marshall was biased against him. Appellant has not provided this court with anything other than unfounded assertions to show that the trial court's admonitions to Marshall were incomplete or ineffective. The record indicates that she agreed to follow the instructions of the trial court. We note that trial counsel's decision to not challenge Marshall could have been a tactical decision. Marshall stated that she believed parents could manipulate their children, especially when the children were young. One of appellant's arguments at trial was that Singer manipulated Timmy into making the accusations in an attempt to prevent Timmy from being taken from her due to parental neglect.
Appellant argues that trial counsel should have challenged juror Hicks for bias because Hicks raised his hand when trial counsel asked if anyone agreed with the statement that psychiatric testimony was a "cop-out." Trial counsel did not question Hicks. Appellant has not provided any information as to what Hicks meant by agreeing with the "cop-out" statement. Further, even if Hicks had a bias, appellant was not prejudiced. Even if it is assumed that appellant's statements to the investigators were not knowingly made, if the jury believed that Timmy was honest when telling his mother, Evans, Dr. Emerick, Hoeffler-Newkirk, and Dep. Lester that appellant had molested him, there was enough evidence before the jury to support appellant's conviction. We do not know what weight the jury gave appellant's statements at trial. The jury very well may have believed that appellant's statements were involuntarily made, yet still believed that Timmy correctly related what happened to him.
Appellant next contends that trial counsel was ineffective for not objecting to testimony regarding appellant's statements when the state had failed to prove the corpus delicti of the crime. Before the state may introduce any alleged confession, the state must provide some evidence that a crime has occurred independent of the confession. This rule was articulated in Statev. Maranda (1916), 94 Ohio St. 364, syllabus:
 1. By the corpus delicti of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. [and] 2. The criminal agency of the act.
 2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged. (Emphasis in original).
Although the corpus delicti rule has ancient origins, the practicality of the rule has come into serious question in light of modern procedural safeguards. The courts refuse to apply the rule with "dogmatic vengeance." State v. Edwards
(1976), 49 Ohio St.2d 31, 36, death penalty vacated (1978),438 U.S. 911, 98 S.Ct. 3147. The burden upon the state to provide some evidence of the corpus delicti is minimal. State v. VanHook (1988), 39 Ohio St.3d 256, 261-262, certiorari denied (1989), 489 U.S. 1100, 109 S.Ct. 1578, rehearing denied,490 U.S. 1076, 109 S.Ct. 2094. In fact, the state need not provide direct and positive proof that a crime was committed. The state may rely upon circumstantial evidence in proving thecorpus delicti. State v. Nobles (1995), 106 Ohio App.3d 246,262, appeal dismissed (1996), 74 Ohio St.3d 1510, citingMaranda, 94 Ohio St. at 371.
In the instant case, the state did provide some evidence tending to prove material elements of the charged crime. Appellant was charged with rape as the result of allegedly engaging in sexual conduct with another not his spouse and less than thirteen years old. R.C. 2907.02(A)(1)(b). Through Timmy and Singer, the state provided testimony that Timmy was six years old at the time of the offense and not appellant's spouse. There was testimony that Timmy spent the night at appellant's apartment at the time of the offense. Singer's testimony demonstrated that the day after staying with appellant, Timmy made a statement that caused her to call the police and take Timmy to the hospital where she saw him examined, including his "private area." Such evidence was sufficient to circumstantially prove that a crime had been committed against Timmy.
It was only after this evidence had been presented that the state presented Hoeffler-Newkirk, Dep. Lester, and Officer Nicol, all of whom testified as to appellant's statements. Trial counsel objected during Dep. Lester's testimony, asserting the corpusdelicti rule. The trial court overruled this objection, finding that the state had presented the evidence described above. Even had trial counsel objected during Hoeffler-Newkirks's testimony, the objection would have been overruled. Trial counsel was not deficient for not objecting earlier to testimony regarding appellant's statements.
Appellant next contends that trial counsel was ineffective for failing to object to testimony relating alleged hearsay statements made by Timmy. These statements were related by Dep. Lester when describing his interview of appellant. Dep. Lester testified that he told appellant that there were allegations that he had performed oral sex on Timmy. Dep. Lester also testified that he told appellant that Timmy had made these accusations and asked appellant if he could think of why Timmy would make the accusations.
Evid.R. 801(C) defines "hearsay:"
 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
The rule prohibiting hearsay, Evid.R. 802, is based upon the unreliability of hearsay evidence and the impossibility of cross-examination. State v. Armstead (1993), 85 Ohio App.3d 247,253. If the statement is offered to prove the truth of the matter asserted in the statement, and the statement does not fall into any of the exceptions to the rule against hearsay, Evid.R. 803 and 804, the statement must be excluded from evidence. Evid.R. 802; Carter, 72 Ohio St.3d at 549.
A review of Dep. Lester's testimony makes it clear that these statements were not offered for the truth of the matter supposedly asserted by Timmy. Dep. Lester did not testify that Timmy's statements that appellant had molested him were true. Rather, he testified that he informed appellant only that such allegations had been made and that Timmy had made the allegations. The testimony was offered only to provide the context of Dep. Lester's interview of appellant. The statements were not offered to prove that appellant had, in fact, performed oral sex on Timmy.
Appellant last contends that trial counsel was ineffective for not objecting to the introduction into evidence of Timmy's redacted medical records. Appellate counsel is apparently unaware that the medical records were introduced according to a stipulation between the parties. The state and trial counsel argued vigorously throughout most of the trial as to what portions of the record should be admitted into evidence. At the close of trial, agreed-upon portions of the medical record were introduced into evidence by stipulation. These portions included Dr. Emerick's observations and diagnosis and Timmy's factual history, which recorded Timmy's statements to medical personnel.
The state initially sought to redact Dr. Emerick's diagnosis, which included his conclusion that the sore on Timmy's penis was due to a fungal infection and not abuse. Appellant's trial counsel wanted this portion of the record admitted into evidence to demonstrate that there were no signs of abuse. To ensure the admissibility of this portion of the record, trial counsel allowed the state to admit other portions of the record which included Timmy's statements to medical personnel. We cannot say that trial counsel was ineffective for making this tactical decision.
We find that appellant's trial counsel was not ineffective. Appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.