THE STATE OF OHIO *v.* MARANDA.

*Criminal law — Corpus delicti defined — Sufficiency and weight of evidence — Confession or extraneous evidence.*

1. By the *corpus delicti* of a crime is meant the body or substance of the crime, included in which are usually two elements:
   1. The act. 2. The criminal agency of the act.
2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the *corpus delicti,* before such confession is admissible. The *quantum* or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case. It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged.

(No. 15137 — Decided May 23, 1916.)

EXCEPTIONS by the Prosecuting Attorney to the Decision of the Court of Common Pleas of Summit county.

Facts are stated in opinion.

*Mr. Charles P. Kennedy,* prosecuting attorney; *Mr. Dow Harter* and *Mr. Coburn Musser,* assistant

prosecuting attorneys, and *Mr. Emerson L. Taylor,* for the exceptions.

*Mr. T. W. Kimber* and *Mr. C. H. Stahl,* against the exceptions.

WANAMAKER, J.   The defendant, Elizabeth Maranda, was indicted by the grand jury of Summit county, Ohio, on the charge of arson, in two counts, one the burning of a dwelling house and the other the burning of certain personal property then and there within said dwelling house.   Defendant entered a plea of not guilty to the indictment, the jury was impaneled and sworn, and trial commenced.

During the trial the state had offered evidence tending to show that three fires had occurred at the house during the afternoon and night of September 3, 1915; the first at about 3:30 o'clock in the afternoon, the second at about 9:53 o'clock that same night, and the third about midnight.   The 9:53 fire was the particular one upon which the defendant was then being tried.

The state offered evidence tending to show that the defendant, Mrs. Maranda, occupied the house in question as a boarding house; that on the afternoon in question the defendant requested her boarders to leave the house, saying that she was going to dress and go down town; that said boarders left the house, walked to the postoffice some blocks away, and then returned to the house to find it closed and full of smoke; that upon entering, one of the boarders found the gas jets in one

of the downstairs rooms turned on and gas escaping; that at this time Mrs. Maranda appeared from some place on the outside of the building; that upon going upstairs the boarders found some rags burning on the floor of the closet off of one of the bedrooms; that this fire was extinguished without calling the fire department; that about seven o'clock in the evening defendant was seen a short distance from the house, 491 South Main street, and at that time stated to a neighbor that she was going to her Wheeler street home, telling her neighbor that in the afternoon of that day she had received a letter from some person, with whom she had previously had some trouble, threatening her with personal harm, and that by reason of that letter she was going to be compelled to give up the house that was burned in the afternoon and that she had closed the house for the night; that on the day preceding the fires the neighbors had seen numerous articles of household goods removed from the house; that about 9:20 P. M., this September 3d, Mrs. Maranda, her two daughters and two young men were joined by one George Sewell, one of the boarders, and walked away from the house in question east toward Wheeler street; that about a block away from the burning dwelling, the defendant, Mrs. Maranda, said to the others of the party that she had forgotten to lock the door of the house and started back toward the house ostensibly for that purpose; that she was seen going to the house by some of her neighbors and that the house at that time was dark; that this was about a half an hour before the first alarm was turned in, which was 9:53 P. M.; that the

neighbors also saw Mrs. Maranda leave the house several minutes after entering the same; that the firemen upon arriving at the Maranda house shortly after 9:53, the time of the alarm, found there were two fires in different parts of the house, one burning in a closet downstairs on the north side of the house and the other in a closet upstairs off of a room on the south side of the house, the upstairs closet being the same one in which the fire had been located in the afternoon; that the chandelier in one of the front rooms was broken off at the ceiling, allowing the gas to escape; and that the defendant carried insurance in the amount of $1500 on the contents of the house.

The state also offered evidence tending to show the location of these several fires in the house, the surroundings, the presence of Mrs. Maranda, her peculiar conduct, to say the least, and thereafter offered in evidence statements and declarations made by the defendant to Charles Miller and Thomas B. Williams of the state fire marshal's office, which statements were in the nature of confessions, made on September 6, 1915. This evidence was admitted by the court. Later the state tendered a written statement signed by the defendant, Maranda, and purporting to be a voluntary confession of all the facts and circumstances connected with the several firings of the boarding house in question on September 3, 1915. This written statement gave in detail the circumstances leading up to each fire, contained an acknowledgment of writing the letter, which Mrs. Maranda·discussed with a neighbor, formerly referred to in the state's evidence, and as-

signed as the reason for writing the letter an attempt upon her part to divert suspicion from herself.

Upon the offering of the written confession, the defendant by her counsel objected to the admission thereof, upon the ground that the *corpus delicti* had not been sufficiently proved. Upon considering this objection, the court ordered an exclusion from the consideration of the jury of the oral testimony of the witnesses, Miller and Williams, and then sustained the defendant's objection to the introduction of the written confession.

Further, the court arrested all the testimony from the jury and directed a verdict for the defendant, saying, in that connection, as the reason for such directed verdict: "The court cannot allow the jury to speculate whether the state has proved the *corpus delicti,* and I will sustain the motion."

The only question, therefore, for the consideration of this court is as to whether or not under the evidence of the case the *corpus delicti* had been sufficiently proven to warrant the introduction of any claimed confession against the defendant, whether that confession was oral or written.

There are three leading cases in Ohio dealing with the question of *corpus delicti* in connection with what is known as extrajudicial confessions.

The first leading case is *Blackburn* v. *State of Ohio,* 23 Ohio St., 146, decided in 1872. The third paragraph of the syllabus reads as follows:

"Although extrajudicial confessions alone are not sufficient to prove the body of the crime in cases

of homicide, they may be taken and used for that purpose in connection with other evidence."

The second case is the *State of Ohio* v. *Leuth,* 5 C. C., 94, decided in 1890, in which case a motion for leave to file a petition in error was denied by the supreme court of Ohio. The third paragraph of the syllabus reads as follows:

"This confession before the coroner was not a judicial confession, and it was necessary that there should be other proof of the *corpus delicti;* but it is not necessary that the agency of the accused should be proved by other evidence which *alone* would prove the guilt of the accused beyond a reasonable doubt."

The third case is *State of Ohio* v. *Knapp,* 70 Ohio St., 380, decided in 1904. The third paragraph of the syllabus reads as follows:

"If the facts extrinsically proved by the state corroborate the confession, then full, direct and positive evidence of the *corpus delicti* is not indispensable to admit the confession in evidence; and if such extrinsic corroborative facts, when considered with the confession, persuade the jury beyond a reasonable doubt of the prisoner's guilt as charged, such evidence will support a verdict of guilty. *Blackburn* v. *State,* 23 Ohio St., 146, approved and followed."

From the foregoing Ohio cases it seems to be conclusively settled:

1. That an extrajudicial confession is not sufficient in and of itself to sustain a conviction of a crime.

24

2. That *some* corroborating circumstances tending to prove criminal agency should be offered by the state before such extrajudicial confession is competent.

This doctrine touching *corpus delicti* is of ancient origin and was born out of great caution by the courts, in consideration of certain cases of homicide wherein it had turned out that by reason of a failure of the government to prove the death of the person charged as having been murdered it so happened that such person sometimes survived the person accused as his murderer. Therefore, the rule that there must be some evidence tending to prove the fact that death had actually ensued; which was later followed by an additional requirement of some evidence that that death was brought about by some criminal agency.

Now, in this case there was no doubt about there having been a fire, two or three of them, that afternoon and night, in the house in question. Secondly, the state's evidence set out the whereabouts and conduct of the defendant covering the period in question, the location of the fires, facts and circumstances tending to show that the fires could not have been accidental, the letter that defendant, Maranda, had told her neighbor that she had received, the broken chandelier allowing the gas to escape so as to facilitate the burning of the building, and other facts and circumstances tending to prove either guilty knowledge or guilty participation, or both, upon the part of the defendant.

It will be noted from the Ohio cases cited, as well as from the text of approved authorities on

criminal law and procedure, that no court has yet undertaken to declare a fixed and fast rule as to the *quantum* of additional or outside evidence necessary to supplement or corroborate a confession before such confession shall be admissible. They do agree, however, that the outside evidence need not be proof beyond a reasonable doubt, or even a *prima facie* case of guilt against the defendant, but that there must be *some* proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed. If such additional or outside circumstances are offered tending to prove the guilt of the accused as charged. and are corroborative of an extrajudicial confession, such confession, if otherwise voluntary and competent, should be admitted. It would be error to exclude such confession, or withdraw the same from the consideration of the jury.

The commission of arson is as common nowadays as the convictions for arson are uncommon. It is a crime difficult to prove at best. The more complete the burning, the less the evidence surviving.

If the defendant, Maranda, had come into open court and entered a plea of guilty to the charges made in the indictment, the court would have proceeded to impose sentence and judgment upon her, and that without any proof of the *corpus delicti*. The judicial confession by her plea of guilty would have been sufficient in itself. But this being an extrajudicial confession, one made outside of court, corroborating circumstances tending to prove the criminal burning are necessary as a prerequisite to the admission of the confession, and, notwithstand-

ing the confession is offered in evidence, the court still must charge the jury that the defendant is presumed in fact and in law to be innocent and that before they can return a verdict of guilty they must find from all the evidence of the case that the defendant wilfully and maliciously burned the building, as charged in the indictment.

This would seem to afford ample protection for innocence, and yet not make conviction so difficult as to well-nigh make it impossible. The rule as to corroborating evidence should be substantially the same as it is in the case of an accomplice. It has become the settled practice of our courts to advise juries not to convict upon the uncorroborated evidence of an accomplice, but no court will undertake to define with precision and exactness how much corroboration shall be necessary, or how many elements of the offense charged the corroborating evidence shall tend to prove. It is enough if it tends to prove some material element of the offense. It would be an insuperable handicap to the state if the court were to charge that the corroborating evidence must prove guilt beyond a reasonable doubt, beyond a probability, or even establish a *prima facie* case. It is enough if under all the evidence, when considered and weighed by the jury, every essential element of the offense has been proven against the defendant beyond a reasonable doubt.

The exceptions, and each of them, are sustained.

*Exceptions sustained.*

Nichols, C. J., Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.