## State v. Banks
*[Cite as 5 AOA 12]*

Case No. C-890219
Hamilton County, (1st)
Decided July 18, 1990

*Arthur M. Ney, Jr., Prosecuting Attorney, and L. Susan Laker, Esq., 411 Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee.*

*Robert R. Hastings, Jr., Esq., 22 West Ninth Street, Cincinnati, Ohio 45202, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, and the briefs and arguments of counsel.

The defendant-appellant, Ellis Banks, has taken the instant appeal from the judgment of the court below convicting him on one count of aggravated murder. For the reasons which follow, the judgment of conviction is affirmed in part and reversed in part.

On the morning of November 4, 1988, the victim, John Lampkin, Sr., was found dead in the driveway of his home. The coroner, Richard Burkhardt, testified at trial that the victim died as a result of a gunshot wound to the head.

Efforts to plot the victim's death began -in 1987, when Beatrice Lampkin ("Lampkin"), the victim's wife, asked her daughter's boyfriend, Larry Southall, to take her husband's life. After Southall declined her request, Lampkin turned to the defendant, who began dating Lampkin's daughter in 1988. Although the defendant refused to involve himself directly in the killing, he did, at Lampkin's request, recruit an acquaintance to commit the murder. It was thereafter through the defendant's intervention that Lampkin met one John Curry, who was allegedly responsible for the actual shooting of the victim.

The defendant was charged in an indictment with one count of aggravated murder, including a firearm specification and a specification that the offense was committed for hire. A jury trial was conducted, after which the defendant was found guilty of aggravated murder but not guilty of both specifications. He was sentenced as appears of record.

In his first assignment of error, the defendant alleges the trial court erred in overruling his motion to suppress evidence. The defendant claims, in support of this assignment, that the state failed to demonstrate that his statements to police on December 24, 1988, were voluntary. This assignment is overruled.

Where, as here, a suppression hearing is conducted by the trial court to determine the voluntariness of the defendant's statements, the court must examine the totality of the circum-

stances. *State v. DePew* (1988), 38 Ohio St. 3d 275, 528 N.E.2d 542.

In this case, the police advised the defendant of his Miranda rights, and the defendant read, initialed and signed a waiver form, while stating that he understood its significance. Accordingly, on the state of this record, we conclude that the trial court did not err when it overruled the defendant's motion to suppress evidence.

In his second assignment of error, the defendant alleges the trial court erred in allowing state's exhibit 18 (the defendant's statement to police) into evidence in the absence of the necessary foundational evidence to establish the *corpus delicti*. This assignment is without merit.

The *corpus delicti* in a homicide prosecution consists of two elements: "(1) the fact of death, and (2) the existence of a criminal agency as the cause of death." *State v. Manago* (1974), 38 Ohio St. 2d 223, 313 N.E.2d 10, paragraph one of the syllabus.

Before an out-of-court confession can lawfully be admitted, the *corpus delicti* must be established by evidence other than the confession. *State v. Van Hook* (1988), 39 Ohio St. 3d 256, 530 N.E.2d 883. In *State v. Maranda* (1916), 94 Ohio St. 364, 371, 114 N.E. 1038, 1040, the court asserted that "the outside evidence need not be proof beyond a reasonable doubt, or even a prima facie case of guilt against the defendant, but that there must be *some* proof, not necessarily direct and positive, usually but circumstantial, tending to prove the fact that a crime was committed." (Emphasis in original.)

In the instant case, prior to the admission of the defendant's confession into evidence, the jury heard testimony from the victim's neighbor, Lori Ellis, who indicated that she heard a "pop-pop" noise at approximately 5:30 on the morning of the offense. When she looked out her window, she noticed a black man pedaling a bicycle down the street at a very fast pace.

Shazzan McCloud testified next and indicated that she too had seen a black man on a bicycle departing from the area when she and the victim's son, John Lampkin, Jr., were en route to the victim's residence. Patrolman David Ogden testified that, when he arrived at the scene, he found the victim face down in a grassy area. He suspected at that time that the victim had died as a result of a gunshot to the face. He also noticed what appeared to be fresh bicycle tracks leading out from the side of the house toward the street. A few hours later, a bicycle was found abandoned in some bushes on a street not far from the murder scene.

We conclude, on the state of this record, that the evidence elicited at trial (prior to the admission of the defendant's confession) was sufficient to establish a *corpus delicti*. Accordingly, the defendant's second assignment of error is overruled.

In his third and fourth assignments of error, the defendant alleges the trial court erred in failing to strike the testimony of Larry Southall and in overruling his motion for a mistrial. The defendant argues, in support of this assignment, that the videotaped testimony of Southall, which detailed statements made by Lampkin to Southall, was hearsay and should not have been allowed into evidence. The state claims that the statements of Lampkin (contained in the testimony of Southall) were admissible under Evid. R. 801(D)(2)(e) since Lampkin and the defendant were conspirators in the murder of the victim.

R.C. 2923.01 indicates that a "conspiracy exists where two or more persons plan or agree to commit a crime, coupled with an overt act substantial enough to show an intention to carry the conspiracy through to completion." *State v. Milo* (1982), 6 Ohio App. 3d 19, 22, 451 N.E. 2d 1253, 1257.

The out-of-court declaration of a co-conspirator is admissible and not hearsay when five criteria are established: "(1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3)the declarant's participation in the conspiracy (4) that the statement was made during the course of the conspiracy; (5) that the statement was made in furtherance of the conspiracy." Evid. R. 801(E)(2)(e).

In the case *sub judice*, it is apparent from a review of the record that, at the time Lampkin made the statements to Southall, she had not entered into a plan or agreement with the defendant to kill her husband. In fact, the record does not establish that Lampkin and the defendant even knew each other at that time. It is our view, therefore, that the testimony of Southall, which involved statements made to him by Lampkin, was hearsay and was erroneously introduced into evidence.

However, while it was error to admit Southall's testimony at that point in the proceedings, the error was not prejudicial in view of other probative evidence presented later to link the defendant to Lampkin and Curry and the conspiracy to kill the victim. See *State v. Milo* (1982), 6 Ohio App. 3d 19, 451 N.E.2d 1253. Most

revealing were the defendant's statements to police in which he indicated that he and Lampkin had agreed that he would procure Curry to kill the victim. In addition, the statements made by Lampkin to Southall dealt with her attempt to solicit Southall to kill her husband. The defendant was not discussed in that conversation and was not, therefore, prejudiced by Lampkin's statements. Accordingly, the defendant's third and fourth assignments of error are overruled.

In his fifth assignment of error, the defendant alleges the trial court erred by admitting into evidence irrelevant and prejudicial hearsay relating to other acts. We disagree.

In the instant case, John Lampkin, Jr., the victim's son, testified that his father did not approve of the defendant staying at the residence; that his father did not approve of the defendant sleeping with his daughter; that his father believed that various articles were taken from the home by the defendant; and that he, John Lampkin, Jr., believed that the defendant, along with his sister, Beth, had appropriated his watch from a jewelry case.

Evidentiary rulings are within the broad discretion of the trial court and will be the basis for a reversal on appeal only on an abuse of that discretion which amounts to prejudicial error. *State v. Finnerty* (1989), 45 Ohio St. 3d 104, 543 N.E.2d 1233.

Abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis* (1982), 1 Ohio St. 3d 89, 91, 437 N.E. 2d 1199, 1201.

In the instant case, we cannot say, based on the state of the record, that the trial court's decision to allow the testimony at issue into evidence was unreasonable, arbitrary or unconscionable. Thus the defendant's fifth assignment of error is overruled.

In his sixth assignment of error, the defendant alleges the trial court erred in permitting the prosecution to elicit the testimony of a police officer regarding the defendant's oral confession. This assignment is overruled.

The defendant argues that since he was not provided with a summary of the oral unrecorded statements made to Detective Keyes, the state should not have been allowed to bring out such testimony on redirect examination.

In *State v. Gregory* (June 7, 1989), Hamilton App. No. C880257, unreported, this court held that "oral statements, not committed to written summary, are not subject to disclosure under Crim. R. 16. See, also, *State v. Williams* (July 29, 1988), Hamilton App. No. C-870384, unreported. We conclude, therefore, that since the state did not violate the requirements of Crim. R. 16(B)(1)(a)(ii), there was no reason for the trial court to exclude Detective Keyes's testimony during redirect examination. This assignment, therefore, is not well taken.

The defendant alleges, in his seventh assignment of error, that his conviction was contrary to the manifest weight of the evidence. This assignment is without merit.

The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

In reviewing a claim that the judgment in a criminal case was against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin* (1983), 20 Ohio App. 3d 172, 485 N.E.2d 717.

In the case *sub judice*, the jury heard the defendant's taped confession in which he stated that although he would not kill John Lampkin, Sr., he would see what he could do about procuring someone who would perform the deed. He continued by indicating that he did "mention" Mrs. Lampkin's request to John Curry. Detective Keyes further testified that the defendant, during interrogation, admitted that he had procured Curry for the purpose of killing "Mrs. Lampkin's husband" and that he had arranged a phone call between Mrs. Lampkin and Curry.

Based on our review of the record, we find substantial evidence upon which a jury could reasonably conclude that all the elements of the offense of aggravated murder were proved beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St. 2d 169, 383 N.E. 2d 132, syllabus. Accordingly, we conclude that the jury did not lose its way and did not create such a manifest miscarriage of justice that the conviction must be reversed. *State v. Martin* (1983), 20 Ohio App. 3d 172, 485 N.E.2d 717.

In his final assignment of error, the defendant alleges the trial court erred in imposing a sentence that was contrary to the mandates of

the Ohio Revised Code. This assignment is well taken.

The applicable statutory provision, R.C. 2929.03(C)(1), indicates that "the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment ***."

In the instant case, the judgment entry reveals that the trial court sentenced the defendant to a "term of life with parole eligibility after serving twenty (20) FULL years of imprisonment."

There is no question that the sentence imposed by the trial court was erroneous. In addition, R.C. 2967.13(C) and (D) and R.C. 2967.19(B) demonstrate that the defendant was prejudiced by the trial court's error.

R.C. 2967.19(B) states:

"Except as provided in division (F) of this section, a person confined in a state penal institution who is serving a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment imposed pursuant to section 2929.022 [2929.02.2] or 2929.03 of the Revised Code and who is not eligible for parole before serving twenty years of imprisonment under that sentence, is entitled, for faithfully observing the rules of the institution, to a diminution of thirty per cent of the time that is required to be served before parole eligibility, as determined under section 2967.13 of the Revised Code. A person confined in a state penal institution who is serving a life sentence imposed pursuant to section 2929.022 [2929.02.2] or 2929.03 of the Revised Code and who is not eligible for parole before serving a term of twenty full years of imprisonment or thirty full years of imprisonment under that sentence is not entitled to any diminution of the twenty full years or thirty full years that he is required to serve before parole eligibility."

R.C. 2967.13(C) and (D) state in pertinent part:

"(C)A prisoner serving a sentence of imprisonment for life with parole eligibility after serving twenty years of imprisonment imposed pursuant to section 2929.022 [2929.02.2] or 2929.03 of the Revised Code becomes eligible for parole after serving a term of twenty years, diminished as provided in sections 2967.19, 2967.193 [2967.19.3], 5145.11, and 5145.12 of the Revised Code. "(D) A prisoner serving a sentence of imprisonment for life with parole eligibility after serving twenty full years of imprisonment imposed pursuant to Section 2929.022 [2929.02.2] or 2929.03 of the Revised Code becomes eligible for parole after serving a term of twenty full years. A person serving such a sentence is not entitled to any diminution of the twenty full years that he is required to serve before parole eligibility under section 2967.19, 2967.193 [2967.19.3], 5145.11, or 5145.12 of the Revised Code."

Clearly, the provisions above establish that the defendant is entitled to be eligible for parole prior to serving twenty years' imprisonment, if, in fact, he faithfully observes and obeys the rules of the institution. Under the sentence meted out by the trial court (twenty "full" years), the defendant is not entitled to any diminution in time and is not eligible for parole until he serves twenty years in the penitentiary.

Accordingly, we affirm the trial court's judgment with respect to the finding of the defendant's guilt. The sentence, however, is vacated and the cause is remanded to the trial court for resentencing only.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

UTZ, P.J., SHANNON and HILDEBRANDT, J.J.