THE STATE OF OHIO, APPELLANT, *v.* MIDDLEBROOKS, APPELLEE.

[Cite as *State v. Middlebrooks* (1999), 84 Ohio St.3d 1237.]

(No. 97–2008—Submitted October 14, 1998—Decided February 10, 1999.)

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Steven J. Ring*, Assistant Prosecuting Attorney, for appellant.

*Rion, Rion & Rion, L.P.A., Inc., John H. Rion* and *Jon Paul Rion*, for appellee.

*Sua sponte,* cause dismissed as having been improvidently allowed. This court orders that the court of appeals' opinion not be published in the Ohio Official Reports and that it may not be cited as authority except by the parties *inter se.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

Cook, J., concurs separately.

Lundberg Stratton, J., dissents.

---

**Cook, J., concurring.** Because the court of appeals decided this case on the basis of plain error, I agree with the decision to dismiss this case as having been improvidently allowed.

---

**Lundberg Stratton, J.** I respectfully dissent from the majority's decision to dismiss this case as having been improvidently allowed. I would find that the court of appeals erred in applying the law of *corpus delecti* in requiring a higher standard of additional evidence than the law requires.

On March 23, 1995, Richard Burgan and his girlfriend, Tawanda Lee, were at Burgan's home watching television when they heard a knock on the front door. Burgan looked through the window of the door, opened the door, and let three men into the house. The three men were Micah Rinehart, Josiah Rinehart, and Antwuan Middlebrooks, defendant-appellee.

At trial, Lee testified that Micah told the defendant that he wanted a twenty sack ($20 worth of marijuana), so the defendant began to prepare the marijuana, when Josiah asked, "Do you have any dope [?]" (cocaine). Burgan asked, "How much dope [?]", and Josiah replied, "About a fifty." Burgan told Josiah that he had a "little bit."

When Burgan handed Josiah the twenty sack, Josiah replied, "I don't want this man, this ain't no twenty." Burgan said, "Either take it or leave it," and the three declined the marijuana. Burgan then unlocked the door and let the three men out. Burgan locked the door and came back to the couch where he had been sitting with Lee, and they continued to watch television.

A few minutes after the three men had left, there was another knock on the door. Burgan went to answer the door and looked through the door's window, turned to Lee and said, "Baby, something is not right," and asked Lee to "get the gun." Lee reached down to the floor and grabbed the gun. Lee placed the gun next to her right leg, as she remained seated on the couch.

When Burgan opened the door, the same three men, Micah Rinehart, Josiah Rinehart, and the defendant, entered the house again. One of them stated an intent to go ahead and purchase the cocaine, so Burgan went to the bedroom. When Burgan returned with the crack cocaine, he sat down on the couch to bag it up, at which time Micah shot Burgan.

Burgan fell back against Lee on the couch, and Lee begged the men not to kill them. As Burgan slumped to the floor, he told Lee to get the gun. She grabbed the gun and attempted to put it in his hands, but he could not hold it. According to Lee, Micah then said, "The bitch got a gun, the bitch got a gun," and then they crouched down low to run toward the side door. As they tried to run out of the side door, Lee jumped off the couch and heard the loud noise of a gunshot. Lee testified that she could feel her foot burning and the glass on the table in front of her shattered.

The three men ran out the side door and Lee called 911. Burgan died at the scene. Lee was able to identify Micah and Josiah, so they were apprehended quickly. After Micah and Josiah implicated the defendant and he was taken into custody, he gave an oral statement of confession as well as a videotaped confession.

A jury convicted the defendant of aggravated robbery, aggravated murder, felonious assault, and possession of dangerous ordnance, each offense containing a firearm specification and a firearm equipped with a silencer specification. The court of appeals affirmed in part and reversed in part. The court affirmed the felonious assault conviction, but reversed the aggravated robbery conviction and discharged the defendant as to that offense. Further, the court of appeals reversed the aggravated murder conviction and remanded with instructions to enter a conviction for murder upon the jury's original verdict.

Today, the majority dismisses this case as having been improvidently allowed. I disagree and for the reasons that follow would find that the court of appeals erred in applying the law of *corpus delecti* in requiring a higher standard of additional evidence than the law requires. In applying the correct standard, there was sufficient independent evidence of the *corpus delecti* to support the admission of the defendant's extrajudicial confession.

"By the *corpus delecti* of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. 2. The criminal agency of the act." *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038, paragraph one of the syllabus. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the *corpus delecti*, before such confession is admissible. The *quantum* or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case. It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged." (Emphasis *sic.*) *Id.*, paragraph two of the syllabus.

This court has since stated that "the *corpus delecti* rule is supported by few practical or social-policy considerations." *State v. Edwards* (1976), 49 Ohio St.2d

31, 35–36, 3 O.O.3d 18, 21, 358 N.E.2d 1051, 1056, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155. Thus, because of the "vast number of procedural safeguards protecting the due-process rights of criminal defendants," there is "little reason to apply the rule with a dogmatic vengeance." *Id.*

In the face of this minimal requirement, the court of appeals found that there was insufficient evidence in the record to prove an intent to rob. I disagree and would find that the court of appeals erred in applying the law of *corpus delecti*. Lee testified that defendant and the two Rinehart brothers first entered Burgan's home asking to buy marijuana. The three men declined the marijuana and left. Within minutes, the defendant and the Rinehart brothers sought to reenter the home. Lee testified that Burgan expressed at that time that he felt that something was wrong and asked Lee to get the gun.

On the day he was arrested, defendant confessed his participation to Detective Terry Pearson. Defendant told Detective Pearson that after Micah did not want the marijuana that Burgan had presented, the men went back outside, and once outside, they "decided to go in and rob Ricky [Burgan]." Defendant told Detective Pearson that they had observed what looked like a thousand dollars on the table and described a big bag of marijuana under the table, and said Burgan was wearing a herringbone necklace.

Detective Pearson testified that defendant stated that after he and the Rinehart brothers left Burgan's house the first time, they walked to the defendant's car, and got in, and when he started to put the key in the ignition, Micah told him not to start the car because they were going to go back. Detective Pearson testified that defendant stated that Micah told Josiah to act like he was going to buy "a fifty," and when Josiah got his attention, Micah would shoot him, Josiah would grab the money and the drugs, and they would all run.

Defendant also told Detective Pearson where he could find the two guns used by the men. Detective Pearson went to the address and recovered a 9 mm HiPoint pistol and a 22 mm Beretta pistol.

Coupled with defendant's confession that he and his friends had conspired to go back to Burgan's home and shoot and rob him, the other evidence presented through Lee, an eyewitness to the crimes, proves an intent to rob. In addition, other facts strongly support the intent to rob. The first time they entered the house, the men had the opportunity to survey the house and see the money and marijuana on the table. Their immediate return supports intent to rob, not purchase. In fact, no other explanation makes any sense, as there was no evidence of a drug deal gone bad, a planned "hit" anonymously between the parties, or other motive.

The fact that the robbery was unsuccessful does not discharge the defendant from the crimes. Indeed, the robbery most likely was defeated only because one of the three men noticed Lee pick up Burgan's gun, as evidenced by the fact that Micah yelled to the others that Lee had a gun.

All inferences strongly support robbery as the motive. This is much more evidence than even just "some evidence." Had the court of appeals applied the proper standard, rather than the higher standard that it applied, the court would have concluded that there was "some" independent evidence of the offense. Accordingly, I would reverse the court of appeals.