DECISION.
Defendant-appellant, Jorel Goldberg, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of two counts of aggravated robbery following a bench trial. He was sentenced to terms of imprisonment of four years on each of the aggravated-robbery counts, to be served concurrently. The trial court declined to impose sentences on two related robbery counts, ordering that they be merged with the aggravated-robbery counts.
At trial, Robert Alexander testified that, on December 11, 1998, he was waiting at a bus stop when he was approached by a young African-American man carrying a large wooden club. The assailant demanded money, and Alexander gave him approximately twenty dollars.
Jonathan Corhn testified that, on December 16, 1998, a young African-American man approached him with a large club and what Corhn believed to be a gun. He demanded that Corhn give him money, and Corhn gave him his portable compact-disc player and his billfold, which contained approximately twenty dollars. This offense occurred near the location of the December 11 robbery.
On December 22, 1998, Cincinnati police officers apprehended a person matching the general physical description of the assailant near the location where the offenses had occurred. He was wearing a San Diego Chargers jacket that matched the one worn by the perpetrator of the December 11 robbery, and he was also wearing the type of bandanna worn in both of the robberies. The officers learned that the man they had arrested was Jorel Goldberg.
The officers questioned Goldberg, and he admitted his involvement in the two robberies.[1] A compact-disc player matching the one taken from Corhn was recovered from Goldberg's residence.
In an earlier appeal, this court reversed Goldberg's convictions on September 13, 2000, because there was no formal jury waiver among the papers transmitted from the trial court.[2] On October 4, 2000, we granted the state's motion to reconsider on the ground that we had reversed the trial court's judgment on an issue that neither party had raised. Subsequently, the record on appeal was supplemented to include the written jury waiver that Goldberg had executed prior to the bench trial below.[3] Because the record now includes the waiver, we hold that the trial court had jurisdiction to proceed without a jury, and we therefore address the assignments of error on their merits.
In his first assignment of error, Goldberg argues that the convictions were against the manifest weight of the evidence. To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[4]
The aggravated-robbery statute, R.C. 2911.01(A)(1), provides that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person * * * and either display the weapon, brandish it * * * or use it."
In the case at bar, we cannot say that the convictions were against the manifest weight of the evidence. The testimony of Alexander and Corhn established that a person had committed theft offenses while brandishing a large stick, and, in Corhn's case, an object that he believed to be a gun. Subsequently, the officers' investigation revealed physical evidence linking Goldberg to the crimes, and Goldberg himself admitted his responsibility for the offenses.[5]
Goldberg argues that alibi testimony on his behalf, in conjunction with his testimony that his confession was false, rendered the findings of guilt erroneous. This argument fails because the weight to be given the evidence and the credibility of the witnesses are primarily matters to be determined by the trier of fact.[6] Our review of the record convinces us that the trial court did not lose its way and create a manifest miscarriage of justice. The first assignment of error is accordingly overruled.
In his second assignment of error, Goldberg maintains that the trial court erred by admitting into evidence his taped confession to the police, because the state had failed to introduce competent, independent evidence of the crimes with which he was charged. We disagree.
In the prosecution of any crime, the corpus delicti — the act and the criminal agency of the act — must be established prior to the admission of the defendant's confession.[7] Here, the state offered the testimony of Alexander and Corhn, who both testified that a person matching Goldberg's physical description had robbed them. In addition, the police officers testified that Goldberg was found wearing clothing similar to that worn by the robber and had in his possession property taken in one of the robberies.
Although Goldberg emphasizes that the victims were unable to make an in-court identification of him, that circumstance is not dispositive. The corpus delicti rule requires only that the state establish "some
evidence outside of the confession that tends to prove some material element of the crime charged."[8] The state presented ample evidence, apart from Goldberg's confession, that the aggravated robberies had occurred as alleged in the indictment. Accordingly, the second assignment of error is overruled.
In his third and final assignment of error, Goldberg claims that he was denied a fair trial by his counsel's failure to subpoena police officers as witnesses. Goldberg was permitted to testify that, en route to the station house, the two escorting police officers told him that if he confessed to the robberies, he would be released, but that, otherwise, he would be jailed. Goldberg now claims that counsel was ineffective because he did not subpoena those officers to testify about their statements. The assignment is without merit.
To establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation, and, in addition, that prejudice arose from counsel's performance.[9] Here, Goldberg has failed to demonstrate that counsel was deficient. There is no indication in the record what the officers' testimony would have been had they been called to testify.[10] Trial counsel could have reasonably concluded that the officers would have denied making the allegedly coercive statements, and that such a denial would have greatly discredited Goldberg's defense. Thus, the failure to call the officers to testify may be deemed sound trial strategy. The third assignment of error is overruled, and the judgment of the trial court is affirmed.
Sundermann, J., concurs.
Doan, J., dissents.
[1] Goldberg admitted approaching Alexander and demanding money, although he maintained that he was not successful in obtaining anything.
[2] See State v. Goldberg (Sept. 13, 2000), Hamilton App. No. C-990677, unreported. Our decision was based upon the holding in Statev. Pless (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, paragraph one of the syllabus (Absent strict compliance with R.C. 2945.05, which requires that a written waiver, signed by the defendant, be filed and made part of the record, a trial court lacks jurisdiction to try a defendant without a jury.).
[3] The transcript of the proceedings also demonstrates that, prior to proceeding with the bench trial, the trial court completely reviewed the written jury waiver with Goldberg and determined that he had executed the waiver knowingly and voluntarily.
[4] State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546.
[5] Goldberg's contention that he did not obtain property from Alexander is legally inconsequential. The aggravated-robbery statute includes attempted thefts in its proscriptions.
[6] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[7] State v. Van Hook (1988), 39 Ohio St.3d 256, 261, 530 N.E.2d 883,888.
[8] Id., quoting State v. Maranda (1916), 94 Ohio St. 364, 114 N.E. 1038, paragraph two of the syllabus. (Emphasis sic.)
[9] Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, 2064; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
[10] Trial counsel did not proffer what the officers' testimony would have been. There was a proffer as to Goldberg's version of the officers' statements, because the trial court had initially ruled that Goldberg could not testify as to what the officers had said. But that proffer was rendered moot when Goldberg was later permitted to testify concerning the statements.