OPINION
{¶ 1} Alma Jennings ("Jennings") was found guilty of two counts of gross sexual imposition and two counts of rape by a jury in the Clark County Court of Common Pleas and was sentenced accordingly. He appeals his conviction.
 {¶ 2} The state's evidence established the following relevant facts.
 {¶ 3} In late 2001, allegations were made that Jennings had engaged in improper sexual contact with his ten-year-old daughter ("the victim"). The allegations were made to Jamie Fricke at the Clark County Department of Child and Family Services by the victim's step-sister.
 {¶ 4} During questioning on January 9, 2002, Jennings confessed to Fricke that he had made the victim manually stimulate him on two occasions and that he had put his penis between her legs once. Later that day, he also confessed to Detective Jim Davis that he had twice performed oral sex on the victim. Written and recorded copies of these confessions were admitted at trial.
 {¶ 5} On March 8, 2002, the victim was examined by Dr. James Duffee, a pediatrician, at the Rocking Horse Center in Springfield, Ohio. Dr. Duffee testified at trial that the examination had been performed for the purposes of providing medical treatment and collecting any evidence of abuse. During the examination, Dr. Duffee asked the victim questions regarding the assaults. He testified at trial regarding her answers:
 {¶ 6} "* * * I asked her, `Did your father touch you in your private?' That was the term she was using for her genitalia. And she answered yes to that, and then a number of questions ensued that sort of outlined the situation that she had had more than one encounter with him.
 {¶ 7} "She said — I asked her, `Did he put anything in your private?' And she said no. And I asked her that basically to determine whether or not I should be looking for signs of penetration.
 {¶ 8} "Did you touch him in his private? Yes. And I asked her, `Was it pointing up or down?' And she said, `Up, I guess.'
 {¶ 9} "Did anything come out of his penis? She first said no and then she thought and said yes. What came out? White gooey stuff. `Did the white gooey stuff get on your private,' I asked, in a matter [sic] to determine whether possibly there was a sexually transmitted disease. She said no. And I said, `Where did it go?' And she looked with disgust at her hand and said, `All over my hand,' with a grimace. I asked, `One time?' She said, `one or two times.'
 {¶ 10} "* * *
 {¶ 11} "Did he kiss you? And she pointed to her cheek and said, `Right here.' I was particularly wondering about other kinds, oral genital contact and she said, `No, right on the cheek.' `And was it like a father kissing his daughter or like a boyfriend kissing his girlfriend,' I asked. And she said, `Like a father kissing his daughter good-bye.'"
 {¶ 12} Dr. Duffee testified that he had observed no physical evidence of abuse.
 {¶ 13} Jennings was indicted on two counts of rape and two counts of gross sexual imposition. A trial was conducted on August 6 and 7, 2002, following which the jury found Jennings guilty on all counts. On August 28, 2002, the trial court sentenced Jennings to two years and three years on the two gross sexual imposition convictions and to six years on each of the two rape convictions. The court ordered that the sentences be served consecutively, for a total of seventeen years of imprisonment.
 {¶ 14} Jennings raises two assignments of error on appeal.
 {¶ 15} "I. THE TRIAL COURT ERRED IN CONVICTING THE APPELLANT OF RAPE."
 {¶ 16} Under this assignment of error, Jennings asserts two arguments. First, he argues that the state failed to present any evidence outside of his confession tending to establish the corpus delicti of the crime of rape. Second, he argues that the trial court erred in admitting the hearsay testimony of Dr. Duffee pursuant to Evid.R. 803(4) because his examination of the victim was made for the purpose of collecting evidence rather than providing medical treatment. Because the resolution of the first argument is partially dependent upon the resolution of the second, we will consider these arguments in reverse order.
 {¶ 17} Jennings argues that the trial court erred in admitting Dr. Duffee's testimony regarding statements made by the victim. The state argues that the testimony was admissible under Evid.R. 803(4), which provides that a hearsay statement to a medical professional is admissible for its truth if the declarant made the statement "for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The state contends that the exam was performed for the purposes of providing medical treatment and care to the victim. Jennings asserts that the exam was performed for the purpose of collecting evidence. Actually, Dr. Duffee testified that the exam had been conducted for both purposes. The victim was referred to the Rocking Horse Center very shortly after the allegations, even though she was not brought in for five months, and she was referred so that she could receive medical treatment and care. Furthermore, the purpose of the exam was to provide the victim with medical treatment and care. However, Dr. Duffee also testified that he had been aware of the investigation and had been looking for any evidence of sexual abuse or rape. He testified that it was mandatory for him to report any sexual abuse of a child; therefore, he would always be looking for any such evidence.
 {¶ 18} We believe that the evidence demonstrates that Dr. Duffee conducted the medical exam of the victim for the primary purpose of providing medical treatment, even though he was aware that he might be called to provide evidence in a criminal case. This is certainly always the case when a doctor is examining a child in a case where there has been an allegation of sexual abuse. Furthermore, the hearsay exception focuses on the perception of the declarant in making her statements. Although there is no evidence in the record regarding the victim's perception of the exam, we believe that it is reasonable to conclude that a ten-year-old girl being examined by a doctor in a pediatrician's office assumes that she is there for the purposes of medical treatment. Accordingly, we conclude that the trial court did not err in admitting the testimony of Dr. Duffee.
 {¶ 19} Turning to Jennings's second argument, the corpus delicti of a crime consists of the act and the criminal agency of the act and must be established by evidence outside of a confession before the confession is admissible. See State v. Maranda (1916), 94 Ohio St. 364,114 N.E. 1038, paragraphs one and two of the syllabus; see, also, Statev. Van Hook (1988), 39 Ohio St.3d 256, 261, 530 N.E.2d 883. "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case." Maranda, supra, at paragraph two of the syllabus. Rather, "[i]t is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Id. The rule "does not require evidence upon all elements of the crime but only `some material element.'" Van Hook, supra, at 262, quoting Maranda, supra, at paragraph two of the syllabus. The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone." State v. Nobles (1995), 106 Ohio App.3d 246, 261-62,665 N.E.2d 1137. However, the rule need not be applied "with a dogmatic vengeance." State v. Edwards (1976), 49 Ohio St.2d 31, 36, 358 N.E.2d 1051.
 {¶ 20} R.C. 2907.02 states:
 {¶ 21} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 22} "* * *
 {¶ 23} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 24} Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 25} In State v. Ledford (Jan. 24, 2000), Clinton App. No. CA99-05-014, the Twelfth District held that the corpus delicti of the crime of rape under R.C. 2907.02 was established by evidence outside the confession where "the state provided testimony that [the victim] was six years old at the time of the offense and not appellant's spouse. There was testimony that [the victim] spent the night at appellant's apartment at the time of the offense. [The testimony of the victim's mother] demonstrated that the day after staying with appellant, [the victim] made a statement that caused [the mother] to call the police and take him to the hospital where she saw him examined, including his `private area.'" Likewise, in State v. Neely, Madison App. No. CA2002-02-002,2002-Ohio-7146, the Twelfth District concluded that the state had established the corpus delicti of rape where there was evidence that the victim was three years old and not the spouse of the defendant and where the victim had begun to insert toys into her vagina after she had begun living with the defendant.
 {¶ 26} In this case, we believe that the state presented sufficient evidence to establish the corpus delicti of the crime of rape. Specifically, there was evidence that the victim was under thirteen years of age and not the spouse of Jennings. There was testimony that the victim made a statement to her step-sister that prompted the step-sister to notify the authorities who then spoke with the victim. Based upon a conversation with the victim, a referral was made to Dr. Duffee at the Rocking Horse Center. When the victim was examined by Dr. Duffee, she told him that Jennings had touched her "private" and that she had touched his "private" and "white, gooey stuff" had come out. She further told Dr. Duffee that this had happened one or two times. We believe that this evidence constituted sufficient evidence of the corpus delicti of the crime of rape, and the trial court properly admitted Jennings's confessions.
 {¶ 27} The first assignment of error is overruled.
 {¶ 28} "II. The Trial Court Erred In Its Sentencing Of Appellant To Consecutive Prison Terms."
 {¶ 29} Under this assignment of error, Jennings argues that the trial court did not appropriately state its findings and reasoning on the record pursuant to R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2) in sentencing him to consecutive sentences.
 {¶ 30} R.C. 2929.14(E)(4) provides:
 {¶ 31} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 32} "* * *
 {¶ 33} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 34} R.C. 2929.19(B)(2) provides:
 {¶ 35} "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 36} "* * *
 {¶ 37} "(c) If it imposes consecutive sentences under section2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 38} Regarding its sentencing of Jennings to consecutive terms, the court stated: "The Court also finds that the Defendant's criminal history and the guidelines of the statute to protect the community and punish the offense, considering all the factors that have been placed forth on this record, require consecutive terms, all counts will be consecutive."
 {¶ 39} The trial court made the findings that consecutive sentences were necessary to punish Jennings and to protect the public from future harm, and we believe that there is sufficient reasoning elsewhere in the trial court's sentencing statements to support these findings. However, the trial court made no finding with respect to whether consecutive sentences were proportionate to the seriousness of Jennings's conduct and to the danger Jenning poses to the public. The state concedes the trial court's error and that the case should be remanded to the trial court on this issue. We agree. We remand this matter to the trial court for it to make findings regarding the imposition of consecutive sentences and to state the reasoning for its findings on the record. In making these findings, the trial court may or may not modify the sentence originally imposed.
 {¶ 40} The second assignment of error is sustained.
 {¶ 41} The judgment of the trial court will be affirmed in part and reversed in part, and this matter will be remanded to the trial court for further proceedings consistent with this opinion.
FAIN, P.J. and GRADY, J., concur.