[Cite as *State v. Lee*, 2014-Ohio-627.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   25632 |
| v. | : | T.C. NO.   12CR994 |
| MICHAEL A. LEE | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____21st____ day of ____February____, 2014.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MICHAEL A. LEE, #668-574, 1851 State Route 56, London, Ohio 43140
        Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

{¶ 1}   After a jury trial in the Montgomery County Court of Common Pleas, Michael A. Lee was convicted of possession of cocaine in an amount equal to or exceeding 100 grams and possession of heroin in an amount equal to or exceeding 50 grams but less than 250 grams, both first-degree felonies.  Lee waived his right to a jury trial on four counts of having a weapon while under disability, and he was convicted of those charges

after a bench trial. The trial court imposed concurrent sentences totaling eleven years in prison.

{¶ 2} Lee, pro se, appeals from his convictions. He claims that the State violated the corpus delicti doctrine by failing to establish the corpus delicti of his offenses before introducing his extrajudicial statements at trial and that his trial counsel rendered ineffective assistance in failing to object on that basis at trial.[1]

{¶ 3} The corpus delicti of an offense consists of the act and the criminal agency of the act. *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). Before a confession to a crime may be admitted at trial, the State must introduce evidence independent of the confession to establish the corpus delicti. *See State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916), paragraphs one and two of the syllabus; *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988). The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone." *State v. Nobles*, 106 Ohio App.3d 246, 261, 665 N.E.2d 1137 (2d Dist.1995). Accordingly, "this rule does not require evidence, other than the confession, showing that the accused committed the crime but, rather, requires some evidence that a crime was, in fact, committed." *State v. Hopfer*, 112 Ohio App.3d 521, 561, 679 N.E.2d

---

[1] Originally, Lee, through appellate counsel, argued that his convictions were based on insufficient evidence and against the manifest weight of the evidence and that his trial counsel provided ineffective assistance by failing to make a closing argument, to move for an acquittal under Civ.R. 29, and to file a motion to suppress Lee's statements to the police. On November 8, 2013, Lee asked to proceed pro se. We granted Lee's motion, indicating that we would consider Lee's pro se "supplemental brief" and would not consider the brief filed by appellate counsel.

321 (2d Dist.1996).

**{¶ 4}** The evidence necessary to satisfy the corpus delicti rule is not the same as is required to defeat a Crim.R. 29 motion. "The evidence presented need not be so strong that it is capable of persuading a factfinder on some element of the crime beyond a reasonable doubt." *Nobles* at 262. Nor must the evidence be "even enough to make it a prima facie case." *Maranda* at paragraph two of the syllabus. Rather, the evidence is sufficient to satisfy the corpus delicti rule "if there is some evidence outside of the confession that tends to prove some material element of the crime charged." *Id.* The evidence need not relate to all elements of the crime, *Van Hook* at 262, and the State may rely on circumstantial, rather than direct, evidence, *State v. Nicely*, 39 Ohio St.3d 147, 152, 529 N.E.2d 1236 (1988). In short, the corpus delicti rule is satisfied by "a rather low" evidentiary standard, *State v. Barker*, 2d Dist. Montgomery No. 23691, 2010-Ohio-5744, ¶ 10, and the Supreme Court of Ohio has indicated that rule need not be applied "with a dogmatic vengeance." *Edwards* at 36.

**{¶ 5}** The State's first witness at Lee's jury trial was Special Agent Richard Miller of the Attorney General's Office in the Division of the Ohio Bureau of Criminal Investigation (BCI). Miller stated that he conducted undercover investigations of drug complaints in 22 counties in southwest Ohio. As part of his position, he worked with the Regional Agencies Narcotics and Gun Enforcement (RANGE) task force, comprised of members of law enforcement from various jurisdictions in the Dayton area. Miller testified that he conducted an investigation and secured a search warrant for a residence located at 706 Steele Avenue in Dayton. Through surveillance, Miller had learned that Lee was

associated with that address. Miller did not testify to the bases for obtaining the search warrant or for believing that Lee was involved in criminal activity.

{¶ 6} According to Miller's testimony, Miller and numerous RANGE task force officers executed the warrant at approximately 11:00 a.m. on March 29, 2012. Lee was inside the home. He was immediately handcuffed and brought into the kitchen. Miller provided Lee with a copy of the search warrant and told Lee that they could go to the basement (away from Lee's girlfriend and children) to talk, if Lee desired. Lee did, and the two, along with Detective Joe Sanders, went to the basement. Miller advised Lee of his *Miranda* rights; Lee agreed to speak with the officers.

{¶ 7} Special Agent Miller told Lee that he (Miller) could not offer leniency for Lee's cooperation; Lee still agreed to talk. Miller then told Lee that he had a "bunch of people that's going to go rooting through the house" looking for contraband. Miller told Lee, "If you know where it's at, * * * let me know and you can point it out, and we'll try to secure the house * * *." Lee agreed to show Miller where contraband was located.

{¶ 8} Miller testified that Lee said, "Well, you can start where you're sitting. You're sitting on something right now." Miller then "peeled back" the blanket on the couch and located baggies of cocaine and heroin. While in the basement, Lee also pointed out a "sandwich bag" box on a table and a similar box sitting on a basement rafter; both boxes contained baggies of cocaine and heroin. Miller also saw a digital scale with white powder caked on the bottom. Detective Hutson, who was photographing the evidence as it was found, also located a baggie of cocaine under the basement stairs.

{¶ 9} Special Agent Miller asked Lee if there was money hidden in the house.

Lee responded that there was a gun and money in the master bedroom closet. Miller escorted Lee upstairs. Lee told Miller that money was located in a particular stack of clothing on a shelf, and Miller located money there. Lee also told Miller that a handgun was located in a box on the floor of the closet; Miller found a Taurus revolver where Lee described.

{¶ 10} Miller further testified that he told Lee that the officers were aware of Lee's parents' home at 26 North Meadow and that investigators were at his parents' house. When Miller asked what would be located at his parents' address, Lee said approximately $20,000 and about five additional ounces of heroin. Miller and another officer transported Lee to the North Meadow house. After obtaining consent to search the residence, Lee and Miller went to the room that Lee and his sister used. Lee opened the bottom drawer of the dresser and pointed out a locked box that contained money and drugs. Lee showed Miller where the key to the box was located. When the box was opened, officers found approximately $20,000 and baggies of heroin. Miller asked Lee why some contraband was located at Lee's parents' house. Lee responded that, "in the business he's in, you wouldn't, basically, hold all your eggs in one basket. In case something might happen at the house, he still had product that would be readily available to him * * *."

{¶ 11} Afterward, Special Agent Miller transported Lee to the police station. Lee offered to identify his suppliers and the houses where he purchased drugs. The officers drove Lee to those locations so Lee could identify them. Miller further testified that they allowed Lee make a controlled phone call to his heroin supplier, where Lee ordered four more ounces of heroin for the officers.

{¶ 12} After Miller's testimony concluded, the State offered the testimony of Detectives Samuel Hemingway and Anthony Hutson, both assigned to the RANGE task force, and Special Agent Charlie Stiegelmeyer of BCI. The officers testified about the execution of the warrant and the collection of evidence.

{¶ 13} The State also presented Gary Shaffer, a forensic chemist at the Miami Valley Regional Crime Laboratory, who performed tests on the drugs seized from the two residences during the investigation of Lee. With respect to items seized at 706 Steele Avenue, Shaffer testified that there were ten baggies that contained a net weight of 210.99 grams of cocaine. Shaffer also tested four plastic bags with tan material containing heroin; the total weight of the bags was approximately 83.5 grams. (An additional plastic bag containing a non-controlled substance had also been submitted to MVRCL for testing.) As for the drugs from 26 North Meadow, Shaffer tested plastic bags with an approximate net weight of 136.78 grams; the bags contained heroin.

{¶ 14} While the jury was deliberating the possession of cocaine and possession of heroin charges, the trial court took evidence on the four having a weapon while under disability charges. (The parties agreed that the court could consider the evidence presented at the jury trial concerning the discovery of the Taurus revolver.)

{¶ 15} The State's first witness during the bench trial was Timothy Duerr, a firearm and toolmark examiner and laboratory supervisor at MVRCL. Duerr testified that he examined four weapons that were recovered relating to Lee; all of the weapons were operable. Agent Miller next testified that, on March 29, 2012, while at 706 Steele Avenue, he had asked Lee if there were weapons in the house. Lee responded that, in addition to the

Taurus, there were two Glocks – one in a lower-level closet and the other under the bed in the master bedroom. Lee stated that the Glock in the closet had been reported stolen and that he had purchased it for a "drug amount of $250." Miller also asked Lee about weapons in a storage unit registered to his girlfriend. Lee told the officers that there was an assault rifle, commonly called an AK-47, and about $50,000 at the storage unit.

{¶ 16} Detective Hutson testified that he recovered a Glock pistol next to the frame of the bed at the head of the bed in the master bedroom. Officer Matthew Steffano testified that he recovered a Glock from the front closet. Detective Hemingway testified that, while executing the search warrant at 706 Steele Avenue, he was asked to respond to a storage locker in Riverside. Hemingway went to the storage locker with several other officers and Lee's girlfriend. When the locker was opened, the officers located a lockbox with a large amount of currency and an assault rifle wrapped in a sheet.

{¶ 17} The State also presented judgment entries (all for the same case) for a Michael Lee, born October 19, 1980, indicating convictions for reckless homicide, possession of cocaine, and tampering with evidence. Lee did not dispute that he was the subject of those convictions.

{¶ 18} Lee testified on his own behalf during the bench trial, and his girlfriend testified on his behalf during the jury trial. Given the issues raised in this appeal, we do not need to discuss their testimony.

{¶ 19} Lee asserts that his inculpatory statements were inadmissible, because the State violated the corpus delicti rule. In its appellate brief, the State acknowledges that, "[p]rior to introducing Lee's statements about the guns, the act of Lee possessing those guns,

and the criminal agency of such possession, had not yet been established." The State asserts that the corpus delicti of the possession charges was established by Special Agent Miller's testimony that he had a search warrant for the house.

{¶ 20} Lee did not object to the State's presentation of its evidence at trial. Accordingly, we review the matter for plain error. Plain error does not occur unless, but for the error, the outcome of the trial clearly would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978); Crim.R. 52(B). The plain error rule is to be invoked only under exceptional circumstances in order to avoid a manifest miscarriage of justice. *Long*, 53 Ohio St.2d at 95.

{¶ 21} The record reflects that Special Agent Miller testified about Lee's statements identifying the location of the drugs in the basement before any evidence was introduced suggesting that drugs were located 706 Steele Avenue. Lee's statement informing Miller that a gun was located in the master bedroom closet was also the first evidence presented by the State that guns were located in the house.

{¶ 22} Regardless, upon review of the evidence, it is apparent that the State ultimately established the corpus delicti of the charged offenses and that Lee's convictions were not based solely on his incriminating statements. The State presented evidence, such as envelopes addressed to Lee at 706 Steele Avenue and photos showing male clothing in the master bedroom, that Lee resided at that home on the day of the seizures. Plastic bags containing 210.99 grams of cocaine and 83.5 grams of heroin were located at that residence. Three handguns – a Taurus and two Glocks – were also located in the house; the two Glocks were found by officers independently of Lee's statements. In addition, Lee showed Special

Agent Miller where drugs were located at 26 North Meadow; plastic bags with an approximate net weight of 136.78 grams of heroin were found where Lee had indicated. An assault rifle was located at a storage unit rented in Lee's girlfriend's name. The State presented judgment entries in Lee's prior case, which demonstrated that he could not lawfully possess a handgun. Although perhaps presented in an improper order at trial, the State presented evidence that established the corpus delicti of Lee's offenses. Considering that the corpus delicti rule is not to be applied "with a dogmatic vengeance," we conclude any error in the State's presentation of its evidence was harmless and did not constitute plain error.

{¶ 23} Next, Lee asserts that this trial counsel rendered ineffective assistance by not objecting to the introduction of his statements before the corpus delicti of his offenses was established.

{¶ 24} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

{¶ 25} Even assuming that counsel should have objected to the introduction of

Lee's statements before the corpus delicti of his offenses was established, the record does not support Lee's contention that he was prejudiced by his counsel's failure to object. The trial transcript reflects that the State had ample evidence to establish the corpus delicti of Lee's offenses and that it could have simply presented its evidence in a different order, had an objection been raised. We cannot conclude that the outcome of Lee's trial would have been different had counsel objected.

{¶ 26}  Lee's assignments of error are overruled.

{¶ 27}  The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Andrew T. French
Michael A. Lee
Hon. Michael L. Tucker