This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Narda Goff, appeals from the judgment of the Summit County Court of Common Pleas, which convicted her of endangering children and complicity to commit sexual battery. We affirm.
 {¶ 2} On June 8, 2001, Defendant and her husband, John Goff ("Goff"), were indicted by the Summit County Grand Jury on a ten-count indictment. The counts pertaining to Defendant were Counts 5 and 6, complicity to commit rape, in violation of R.C. 2907.02(A)(2) and 2923.03; Counts 7 and 8, complicity to commit sexual battery, in violation of R.C. 2907.03(A)(5) and 2923.03; and Count 10, endangering children, in violation of R.C. 2919.22(A). By means of a supplemental indictment, dated October 12, 2001, Defendant was charged with two additional counts: Counts 16 and 17, complicity to commit sexual battery, in violation of R.C. 2907.03(A)(5) and 2923.03(A)(2). Subsequently, the State moved to dismiss, without prejudice, Counts 5, 6, 7, and 8. The State proceeded on Count 10, endangering children, and Counts 16 and 17, complicity to commit sexual battery.
 {¶ 3} Thereafter, Defendant waived her right to a jury trial and elected a bench trial. The court found Defendant guilty of one count of endangering children, and one count of complicity to commit sexual battery. Defendant received concurrent three-year sentences and was found to be a sexually oriented offender.
 {¶ 4} Defendant timely appealed raising three assignments of error which have been rearranged for ease of review.
 ASSIGNMENT OF ERROR II {¶ 5} "The State failed to prove beyond a reasonable doubt that [Defendant] aided and abetted the principal offender in committing sexual battery. Since that charge was a material element of the endangering children charge, the State failed to carry its burden of proof on both convictions as required by the Fourteenth Amendment Due Process Clause."
 {¶ 6} In her second assignment of error, Defendant essentially argues that the State failed to introduce sufficient evidence to prove beyond a reasonable doubt that she aided and abetted the principal offender in committing sexual battery. We disagree.
 {¶ 7} Sufficiency is a legal standard applied when discerning whether evidence produced at trial is legally sufficient to support a conviction for an offense. State v. Eastridge, 9th Dist. No. 21068,2002-Ohio-6999, at ¶ 27, citing State v. Thompkins (1997),78 Ohio St.3d 380, 386. Ultimately, it is a test of adequacy and "requires a determination of whether the state has met its burden of production at trial[.]" State v. Smith, 9th Dist. No. 20885,2002-Ohio-3034, at ¶ 7-8, quoting State v. Gulley (Mar. 15, 2000) 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). A reviewing court considers the evidence in a light most favorable to the prosecution, and inquires whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Carter (1995), 72 Ohio St.3d 545, 553, quotingJackson v. Virginia (1979), 443 U.S. 307, 319, 61 L.Ed.2d 560.
 {¶ 8} In the instant case, Defendant was convicted of violating R.C. 2919.22(A), which provides that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A "substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).
 {¶ 9} Defendant was also found guilty of complicity to commit sexual battery. "Sexual battery" is defined as "engag[ing] in sexual conduct with another, not the spouse of the offender, * * * [if] [t]he offender is the other person's natural or adoptive parent, or a stepparent[.]" R.C. 2907.03(A)(5). Sexual conduct includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another." R.C. 2907.01(A). Additionally, R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Aiding and abetting includes assisting, inciting, and encouraging the principal to commit the offense. State v. Sims (1983),10 Ohio App.3d 56, 58.
 {¶ 10} Defendant argues that the State failed to prove the corpus delicti of the crime before Defendant's confession was admitted into evidence. The corpus delicti of a crime consists of two elements, the act and the criminal agency of the act. State v. Van Hook (1988),39 Ohio St.3d 256, 261; State v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. Before an alleged confession is admitted, there must be "some evidence outside of the confession that tends to prove some material element of the crime charged." (Emphasis sic.)Maranda, 94 Ohio St. 364 at paragraph two of the syllabus. This independent evidence need not equal proof beyond a reasonable doubt. Id. See, also, State v. Black (1978), 54 Ohio St.2d 304, syllabus; State v.Bencic (May 3, 1995), 9th Dist. No. 16895, at 17.
 {¶ 11} Although the corpus delicti rule is well established in Ohio, the practicality of the rule has come into question in light of the modern procedural safeguards afforded to criminal defendants. State v.Edwards (1976), 49 Ohio St.2d 31, 35-36. As such, courts do not apply the rule with "dogmatic vengeance." Id. at 36. The burden on the state to produce "some evidence" of the corpus delicti is minimal. Van Hook,39 Ohio St.3d at 261-62. Direct and positive proof that a crime was committed is not required; circumstantial evidence may be relied upon.State v. Nobles (1995), 106 Ohio App.3d 246, 262, citing Maranda,94 Ohio St. at 371.
 {¶ 12} In the instant case, Shenna Grimm ("Grimm"), Defendant's daughter, testified at trial. Grimm, who was born on August 30, 1982, resided with Defendant and her stepfather, Goff, until January of 2001. Both Defendant and Goff participated in raising Grimm. Grimm stated that she was home-schooled after completing the fourth grade. However, she was unable to recall receiving any homework or completing any projects or tests under the supervision of Defendant.
 {¶ 13} Grimm asserted that one evening, when she was fifteen years old, Defendant and Goff approached her while she was watching television. They asked her to speak with them for a moment. Grimm "figured they wanted to talk to [her] about * * * doing the dishes or something else, and that's when [Defendant] told [her] that * * * she wanted [Grimm] to have their child." Grimm stated that she was confused and thought that it may be a joke. She questioned Defendant and Goff and was informed that Goff wanted a child but Defendant was unable to conceive because she underwent a hysterectomy in the past. Grimm initially responded in the negative but then asked for some time to think about the situation; "[she] knew something wasn't right, but [she] couldn't pinpoint what it was."
 {¶ 14} Grimm recalled, that one month later, Goff pointed a gun at her head and threatened to kill Defendant if she failed to participate in their plan. Grimm explained that she then confronted Defendant and agreed to have the baby. She testified that Defendant then planned her fertility cycle; "[Defendant] knew which dates [Grimm] was the most fertile." Grimm further testified that "[Defendant] told [her] she was going to help [Goff] ejaculate into a cup and they were going to fill it with a syringe * * * without the needle on it." Grimm explained that this plan was carried out in December of 2000. She watched Defendant and Goff enter their bedroom. Grimm stated that "[she] was in [her] bedroom and [Defendant] went to go get a glass of water, and Goff put [the syringe] in [her] vagina[,]" and injected the sperm. She explained that this procedure happened twice. Grimm stated that Defendant was in the house on one occasion but not present in the bedroom. Grimm indicated that the original plan was for her to insert the syringe herself. Grimm maintained that she did not reveal to Defendant that Goff inserted the syringe himself.
 {¶ 15} Throughout her testimony, Grimm asserted that she was not permitted to have friends and thus had no one to discuss the situation with. She noted that even Defendant did not speak to her about the ramifications of having or raising a child, the various changes to her body while pregnant, or the difficulties relating to her social life once she was a teenage mother. Grimm maintained that she was not an educated individual; she "don't know barely anything that's out there." Additionally, Grimm recalled Defendant telling her that she was "so slow" because she "was born dead."
 {¶ 16} Grimm testified that, on Christmas Eve, Defendant and Goff purchased a pregnancy test; "[Grimm] took it, and that was [Defendant's] Christmas present for [Goff]." Grimm was pregnant and gave birth to a baby boy on September 4, 1999. Goff is listed on the birth certificate as the baby's father. Grimm lived with Defendant and Goff until January of 2001 when she moved in with her fiance and his family. Upon discussing the situation with her fiance and his family, Grimm "found out" that having her stepfather's child was "not how normal people lived and that [it] was wrong." Grimm then filed a police report; she asserted that she wished to charge only Goff and not Defendant. Grimm explained that she loved Defendant and it was hard to testify against her.
 {¶ 17} Grimm also offered testimony regarding the various counseling sessions she attended after the baby's birth. Grimm revealed that she was scared and did not want to have a child. However, she took part in the plan because she "knew that would please [Defendant and Goff] and that's all [she] cared about." While Grimm was still receiving counseling, she had a suicidal episode. In September of 2001, Grimm indicated that she tried to kill herself by swallowing 300 different pills. She was then admitted to the Windsor Hospital, a mental facility, for appropriate treatment. Grimm testified that after leaving the hospital she eventually stopped attending counseling sessions because "[t]hey weren't working anymore." She noted that they were too stressful and confusing. Grimm further noted that she had approximately seven or eight jobs over the past year and was unable to keep a job because of stress. She explained that work was too much stress combined with everything else that had occurred in her life.
 {¶ 18} Julie Anslie ("Anslie"), a licensed social worker, also testified at trial. Anslie began counseling Grimm in August of 2001. She testified that Grimm's symptoms included nightmares, flashbacks, panic attacks, anxiety, and depressive symptoms, and explained that these occurrences are indicators of posttraumatic stress disorder ("PTSD"). Anslie diagnosed Grimm with PTSD, a debilitating condition, and indicated that her diagnosis coincided with the diagnosis of Grimm's previous psychologist, Dr. Barbara Stevens. Anslie explained that sexual abuse is traumatic event that can lead to PTSD and impregnation alone may cause emotional harm. She opined that Grimm's pregnancy exacerbated her previous mental health problems and recommended that Grimm continue to receive counseling in the future.
 {¶ 19} Additionally, Detectives Kenneth Mifflin and Edith Gaffney testified before the trial court. Detectives Mifflin and Gaffney conducted an interview of Defendant. Detective Gaffney recalled Defendant explaining that she and Goff developed the idea of inseminating Grimm with Goff's sperm so they could have a child. Detective Gaffney stated that Defendant alleged Grimm was "quite promiscuous" and wanted to have a child. Defendant did not want her immature daughter to have a child with a stranger, so she and Goff decided to impregnate Grimm with Goff's child so "they would have more control over the child." Defendant indicated that she planned Grimm's ovulation cycle to gauge the "prime days" to impregnate her. Detective Gaffney testified that "[Defendant] stated that she helped * * * ejaculate [Goff], they collected the sperm into a cup. [Defendant] removed the sperm from a cup with a syringe and then [Goff] put it inside [Grimm]." Detective Gaffney further testified that "[Defendant] told us she watched [the impregnation] once and the other times she was not present in the room while it happened," but she was present in the house. Detective Mifflin offered conflicting testimony. He recalled Defendant stating that she was in the room on more than one occasion while Goff impregnated Grimm.
 {¶ 20} Applying the minimal standards expressed in Maranda, and in light of the limited utility of the rule as stated in Edwards, we conclude that the record contains "some evidence" of both the criminal act and a criminal agency tending to prove the corpus delicti. Such evidence is sufficient to prove that a crime had been committed against Grimm. Accordingly, the corpus delicti rule was satisfied before evidence of Defendant's confession was heard. Thus, the trial court did not improperly allow Defendant's confession to be admitted as evidence.
 {¶ 21} Upon review of the evidence presented at trial, it is clear that the trial court could conclude, beyond a reasonable doubt, that Defendant not only created a substantial risk to the health or safety of her daughter, by violating a duty of care and protection, but also aided and abetted Goff, Grimm's stepfather, in committing sexual battery upon Grimm. The evidence indicates that Defendant actively participated and assisted in the planning and execution of the insemination of her daughter. Accordingly, Defendant's second assignment of error lacks merit.
 ASSIGNMENT OF ERROR III {¶ 22} "The trial court erred in sentencing [Defendant] to concurrent terms on complicity to commit sexual battery and endangering children as those were allied offenses of similar import, pursuant to R.C. 2941.25, and therefore multiple * * * sentencing was barred by the Double Jeopardy Clause of the United States Constitution."
 {¶ 23} In her third assignment of error, Defendant alleges that the trial court erred by sentencing her to concurrent terms. Specifically, she maintains that complicity to commit sexual battery and endangering children are allied offenses of similar import and therefore the concurrent sentences resulted in a violation of the Double Jeopardy Clause. Defendant's contentions lack merit.
 {¶ 24} The Double Jeopardy Clause, of the United States and Ohio Constitutions, protects a defendant from receiving multiple punishments for the same offense. This principle was reinforced through the enactment of R.C. 2941.25. State v. Urbin, 9th Dist. No. 01CA007846,2002-Ohio-3410, at ¶ 41. That statute provides:
 {¶ 25} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 26} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25.
 {¶ 27} The Ohio Supreme Court has created guidelines for determining whether crimes constitute allied offenses. State v. Jones
(1997), 78 Ohio St.3d 12, 13. If the elements of the various crimes "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import[.]" Id. When gauging the interrelation and similarity of the offenses, the abstract elements of the crimes are to be compared. Urbin
at ¶ 45, citing State v. Rance (1999), 85 Ohio St.3d 632, 637. See, also State v. Myers (Apr. 4, 2001), 9th Dist. No. 3078-M, at 6. If the elements do not correspond, the offenses are dissimilar and the court's inquiry ends; multiple convictions are permitted. R.C. 2941.25(B); SeeState v. Nixon (Apr. 25, 2001), 9th Dist. Nos. 00CA007624 and 00CA007638, at 27. Only when the crimes are found to be of similar import, will the court then determine whether the defendant committed those offenses separately or with a separate animus. Rance,85 Ohio St.3d at 636; Nixon, supra, at 27.
 {¶ 28} In this case, Appellant was convicted of endangering children. R.C. 2919.22(A) provides that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A "substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Appellant was also convicted of complicity to commit sexual battery. "Sexual battery" is defined as "engag[ing] in sexual conduct with another, not the spouse of the offender, * * * [if] [t]he offender is the other person's natural or adoptive parent, or a stepparent[.]" R.C. 2907.03(A)(5). R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"
 {¶ 29} In comparing the elements of the code sections, there are differences that distinguish one offense from the other. Each requires different action or inaction on the part of the perpetrator of the crime. In the abstract, the elements are such that the commission of endangering children does not result in the commission of sexual battery and vice versa. See Urbin at ¶ 45, citing Rance,85 Ohio St.3d at 636. Accordingly, these offenses are not allied and of similar import. See Urbin at ¶ 45. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I {¶ 30} "The trial court erred in finding that the statements of [Goff] fell within a hearsay exception under Evid. R. 801(D)(2)(e) and thereby violated [Defendant's] Sixth Amendment right to confront the witnesses against her as [Goff] did not testify."
 {¶ 31} On February 14, 2003, Defendant filed a "Motion to Dismiss with Prejudice Assignment of Error I." Defendant indicated that she no longer wished to pursue this alleged error as a reversal could possibly result in a re-trial. Accordingly, we will not further address assignment of error one.
 {¶ 32} Defendant's second and third assignments of error are overruled. The first assignment of error has not been addressed. The judgment of the Summit County Court of Common Pleas is affirmed.
CARR, J., BATCHELDER, J. CONCUR.